# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| GARY GROVER, et al., | ) | CASE NO. 1:19-cv-0012 |
| | ) | |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| BMW OF NORTH AMERICA, LLC, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on defendant's motion to dismiss or sever. (Doc. No. 17, Motion ["Mot."].) Plaintiffs filed an opposition brief (Doc. No. 19, Opposition ["Opp'n"]) and defendant replied. (Doc. No. 20, Reply ["Reply"].) The motion is now ripe for a decision. Defendant has requested oral argument. Finding that the issues have been fully briefed and that oral argument would not assist the Court, the request is denied.

## I. BACKGROUND

The following facts are drawn from plaintiffs' amended complaint, they are accepted as true for purposes of resolving defendant BMW of North America, LLC's ("BMW") motion to dismiss. Plaintiffs, Gary Grover ("Grover"), Reginald Williams ("Williams"), Dana Walling ("Walling"), Joshua Cribbs ("Cribbs"), Wendy Massey ("Massey"), John Webb ("Webb"), and Parker Jarvis ("Jarvis") (collectively "plaintiffs") are Ohio residents and purchasers of BMW-manufactured automobiles.[1] (Doc. No. 13, Amended Complaint ["Am. Compl."] ¶¶ 9–64.)

---

[1] The amended complaint lists an eighth plaintiff, Ava Littlejohn ("Littlejohn"). BMW asserts that Littlejohn's claims are barred because she "released all claims … against BMW" in a previous lawsuit. (Mot. at 252.) In their opposition brief, plaintiffs' counsel agrees to dismiss Littlejohn's claims. (*See* Opp'n at 432 n.1.) The Court will not consider Littlejohn's claims for purposes of resolving this motion and she is dismissed from this action.

Plaintiffs' automobiles (the "Vehicles") are all equipped with a twin-turbocharged V8 engine, known as the N63 engine. (*Id.* ¶¶ 87, 89.) At the time of purchase, BMW made representations as to the Vehicles' quality, and assured plaintiffs that the Vehicles were free from defects. (*Id.* ¶ 78.) When making their purchase decisions, plaintiffs relied upon BMW's representations regarding its New Vehicle Limited Warranty (the "Warranty") that accompanied the sale of the vehicles. (*Id.* ¶ 79.) Under the Warranty—which was fully transferable to subsequent purchasers—BMW promised to repair or replace defective components for four years or 50,000 miles from the initial date of purchase. (*Id.* ¶ 80.)

Soon after making their respective purchases, plaintiffs observed that the Vehicles consumed an excessive amount of engine oil, which required them to add additional quarts of oil throughout the warranty period and before BMW's recommended oil change intervals. (*Id.* ¶¶ 12, 20, 28, 39, 47, 55, 65.) Plaintiffs brought the oil-consumption issue to the attention of authorized BMW dealerships but were told that excess oil consumption was normal. (*Id.* ¶¶ 13, 14, 21, 22, 29, 30, 40, 41, 56, 57, 66, 67.) Plaintiffs later discovered that the N63 engine contained a manufacturing defect which caused it to consume engine oil at an abnormally rapid pace. (*Id.* ¶ 85.)

The defect has become so widely known that BMW has issued several technical service bulletins ("TSB") to address complaints related to excessive oil consumption. (*Id.* ¶ 101.) Instead of addressing the underlying cause of the oil consumption, BMW simply instructed its service technicians to add two quarts of engine oil to N63 vehicles—when the cars' electronic systems only called for one additional quart—while claiming that "additional engine oil consumption … is normal and not a defect." (*Id.* ¶¶ 103–05.) After receiving hundreds of complaints, BMW launched several programs to address the oil-consumption problem, including the "N63 Customer Care Package" which reduced the recommended oil change intervals from the earlier of 15,000 miles

or two years, to the earlier of 10,000 miles or one year. (*Id.* ¶¶ 110–12.) Additionally, BMW authorized dealerships to provide disgruntled N63 purchasers with up to $50 in BMW merchandise. (*Id.* ¶¶ 110, 114.)

BMW learned of the oil-consumption defect in 2008 through, *inter alia*, pre-release testing, durability testing, and aggregate data from BMW dealers. (*Id.* ¶ 118.) BMW failed to disclose the defect even though customers' safety was jeopardized. (*Id.* ¶¶ 119–20.) Plaintiffs could not have reasonably discovered the defect prior to acceptance of the Vehicles and would not have purchased the Vehicles had they known of the oil-consumption defect. (*Id.* ¶¶ 124, 125.)

Plaintiffs' amended complaint alleges: (1) breach of warranty pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"); (2) breach of implied warranty of merchantability pursuant to the Warranty Act and Ohio Rev. Code § 1302.27; (3) breach of express warranty under Ohio Rev. Code § 1302.26; and (4) violation of the Ohio Consumer Sales Practices Act ("CSPA") Ohio Rev. Code § 1345.01, *et seq*. (*See Id.* ¶¶ 142–86.)

Plaintiffs seek revocation of acceptance of the Vehicles and money damages in the form of a refund of the full contract price. In the alternative, plaintiffs seek "replacement of the subject vehicles with new vehicles, or repair of the defective subject vehicles with an extension of the express and implied warranties…." (*Id.* at 152.[2]) Finally, plaintiffs seek incidental and consequential damages, treble and punitive damages, and reasonable attorney's fees. (*Id.*)

BMW filed the current motion to dismiss or sever on April 22, 2019. (*See* Mot.)[3] BMW asks this Court to sever the seven plaintiffs, arguing that they are misjoined under Fed. R. Civ. P. 20(a). (Doc. No. 18, Memorandum in Support of Motion to Dismiss ["Memo"] at 262–67.) BMW

---

[2] All page number references are to the page identification number generated by the Court's electronic docketing system.

[3] BMW filed a motion to dismiss or sever based on the original complaint on March 4, 2019. (Doc. No. 10.) That motion is dismissed as moot due to the filing of the amended complaint and the instant motion.

asserts that, once severed, no individual plaintiff will meet the amount-in-controversy threshold required under the Warranty Act and, therefore, the claims should be dismissed for lack of subject matter jurisdiction.[4] (Memo at 259.)

## II.   LAW AND ANALYSIS

### A.  Motion to Sever

BMW requests that this Court sever the seven "plaintiffs' cases as misjoined in contravention of Federal Rules of Civil Procedure Rules 20 and 21…." (Mot. at 250.) Under Rule 20, persons may join in the same action if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1).

"Joinder is generally favored under the federal rules." *Scott v. Fairbanks Capital Corp.*, 284 F. Supp. 2d 880, 887 (S.D. Ohio 2003). Joinder "promote[s] trial convenience and expedite[s] the final determination of disputes, thereby preventing multiple lawsuits. Single trials generally tend to lessen the delay, expense[,] and inconvenience to all concerned." *Patrick Collins, Inc. v. John Does 1-12*, 282 F.R.D. 161, 166 (E.D. Mich. 2012) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974)). Therefore, when exercising its discretion under Rule 20, trial courts should "accord a liberal interpretation to the requirements in order to prevent unnecessary multiple lawsuits." *Ivery v. Gen. Die Casters, Inc.*, No. 5:17-cv-37, 2017 WL

---

[4] Plaintiffs assert that this Court has subject matter jurisdiction pursuant to the Warranty Act and diversity jurisdiction. (Am. Compl. ¶¶ 3–4.) Plaintiffs—who are all Ohio residents—claim that BMW is "organized under the laws of Delaware with its principal place of business located … [in] New Jersey." (*Id.* at ¶¶ 6–7.) But unlike corporations—which are citizens of their states of incorporation and their principal place of business—limited liability companies "have the citizenship of each partner or member." *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). Plaintiffs have failed to identify BMW's members or the citizenship of those members. Therefore, the amended complaint is inadequate to establish diversity jurisdiction. Nevertheless, because the Court has determined it has jurisdiction pursuant to the Warranty Act, it need not address the issue of diversity jurisdiction at this time.

6270239, at *3 (N.D. Ohio Dec. 8, 2017) (citing *Brown v. Worthington Steel, Inc.*, 211 F.R.D. 320, 324 (S.D. Ohio 2002)). A district court may sever a party if they have been misjoined, but the court may not dismiss the action on that basis. *Roberts v. Doe*, No. 16-2082, 2017 WL 3224655, at *2 (6th Cir. Feb. 28, 2017) (citing Fed. R. Civ. P. 21 and cases).

### i. Same Transaction or Occurrence

Plaintiffs' claims against BMW arise out of the same set of transactions or occurrences. The determination of whether events arise out of the same set of transactions or occurrences is a fact-sensitive inquiry that must be analyzed on a case-by-case basis. *Scott*, 284 F. Supp. 2d at 888 (citing *Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 231–32 (M.D. Tenn. 2001)). The phrase "transaction or occurrence" is "given a broad and liberal interpretation in order to avoid a multiplicity of suits." *LASA Per L'Industria Del Marmo Societa Per Azioni of Lasa, Italy v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969). To determine whether claims arise from the same transaction or occurrence, the reviewing court evaluates whether there is a logical relationship between the claims. *See id.*

BMW asserts that plaintiffs' claims must be severed because they do not arise out of the same transaction or occurrence. Specifically, BMW argues that the allegations in the amended complaint are the result of seven separate transactions, spanning a seven-year period, and which occurred at six different dealerships. (Memo at 257.) Additionally, "[e]ach plaintiff's warranty claims are specific to the particular BMW car … he or she purchased." (*Id.* at 258.)

Plaintiffs, on the other hand, claim that joinder is proper, citing *El Fakih v. Nissan N. Am., Inc.*, No. 18-cv-60638, 2018 WL 4193675, at *1 (S.D. Fla. July 26, 2018)—a case with facts similar to those at issue here. (Opp'n at 436–37.) In *El Fakih*, plaintiffs were Florida residents who purchased cars with a transmission defect which caused the vehicles to "hesitate, jerk, and lack power…." *Id.* The vehicle manufacturer, Nissan, acknowledged the transmission defect and

distributed a TSB to its authorized dealerships. *Id.* But the remedies contained in the TSB did not fix the defect. *Id.* Plaintiffs ultimately brought suit against Nissan, asserting claims under the Warranty Act. *Id.* at *2. Nissan filed a motion to sever, arguing that the plaintiffs' claims did not arise out of the same transaction or occurrence. *Id.* In denying the motion to sever, the *El Fakih* Court held that plaintiffs' claims were all "premised on the same faulty transmissions…." *Id.* at *4. And even though plaintiffs "individually purchased their vehicles and [took] them to varying dealerships for repairs," their claims arose out of the same series of transactions or occurrences because their vehicles contained the same defective transmission and Nissan failed to honor its warranty. *Id.*

Here, like in *El Fakih*, the plaintiffs' claims all arise from the same factual occurrences; they each purchased a BMW automobile with a defective N63 engine. BMW knew the N63 engine was defective. (Am. Compl. ¶ 175.) The plaintiffs notified authorized BMW dealerships that the Vehicles consumed excessive engine oil during the warranty period. (*Id.* ¶¶ 13, 21, 29, 40, 48, 56, 66.) BMW assured plaintiffs that excessive oil consumption was normal and not the result of a defect. (*Id.* ¶¶ 14, 22, 30, 41, 49, 57, 67.) BMW did not repair the defect in accordance with the Warranty. (*Id.*) Accordingly, plaintiffs' claims are all logically related and, therefore, arise from the same set of transactions or occurrences.

### ii. Common Questions of Law and Fact

BMW's briefing does not dispute the second prong on the Rule 20 requirements. "By its very nature, the common question requirement is usually more easily met than the transactional requirement." *Ivery*, 2017 WL 6270239, at *4. Plaintiffs' claims undoubtedly share common questions of fact including, among other things: whether the N63 engine was defective, whether the defect caused excessive oil consumption, whether and when BMW was aware of the defect, whether BMW concealed the defect, and whether BMW refused to repair the defect during the

warranty period. Common questions of law are present as well, to wit: what BMW's contractual duties were related to the defective N63 engine and whether those duties were breached when BMW failed to repair or replace the defective engines. These common questions of law and fact meet the second prong of the joined test in Rule 20.

### iii. Whether Joinder will Prejudice BMW

BMW also asserts that it will suffer prejudice if plaintiffs' claims proceed together because the Vehicles "represent 4 different model years" and were presented to "different dealerships and different technicians" to address the oil-consumption issue. (Memo at 262–65.) Because of this, BMW believes "it is wholly unrealistic to expect juries (sic) to keep the facts straight and render a fair verdict as to each plaintiff…." (Memo at 264.) BMW relies on *Clay v. United Parcel Serv., Inc.*, No. 5:04-CV-1262, 2007 WL 3125135, at *2 (N.D. Ohio Oct. 24, 2007) to argue that plaintiffs' claims should be severed due to potential juror confusion. (*Id.*) But *Clay* is easily distinguishable. *Clay* was an employment law case in which several plaintiffs brought different claims against their employer, including "race discrimination, hostile work environment, and retaliation…." *Id.* at *1. The *Clay* plaintiffs did not allege that their employer "engaged in a pattern or routine practice of race discrimination[.]" *Id.* at *2. Rather, each plaintiff raised "individual claims of disparate treatment based on race." *Id.* The claims arose from conduct that occurred at different branch locations and plaintiffs "engaged in dissimilar types of work under a variety of supervisors[,]" and their claims were the result of discrete incidents. *Id.*

In contrast here, plaintiffs claim that BMW engaged in a pattern or routine practice—failing to honor the Warranty. Further, plaintiffs share the same four causes of action (*see* Am. Compl. ¶¶ 142–86), which result from the same factual predicate—BMW manufactured a defective engine and failed to remedy the defect under the Warranty. The fact that the Vehicles are difference model years is largely irrelevant because the Vehicles, regardless of model year, all had

the same N63 engine. Similarly, the fact that plaintiffs had "separate interactions" with "different dealer personnel" (Memo at 266) does not render the case overly confusing; particularly because each dealer's response was largely the same—excess oil consumption is normal.

The Court is cognizant that some of the Vehicles were covered by a "New Vehicle Limited Warranty" and others by a "Certified Pre-Owned Protection Plan." (*see* Memo at 263). But "'[a]bsolute identity of all events' as to the several plaintiffs is unnecessary for permissive joinder under Rule 20(a)." *Ivery*, 2017 WL 6270239, at *3 (quoting *Mosley*, 497 F.2d at 1333); *see also Harper v. Pilot Travel Ctrs., LLC*, No. 2:11-cv-759, 2012 WL 395122, at *4 (S.D. Ohio Feb. 7, 2012) ("[T]he presence of some material differences between [the plaintiffs'] allegations does not automatically foreclose their claims from being deemed to arise from the same 'transaction or occurrence' for purposes of permissive joinder."). In its reply, BMW argues that the "[n]ew car warranty *may/or may not* apply" to all plaintiffs, depending on the mileage of their individual vehicles. (Reply at 454 (emphasis added).) And as a result, plaintiffs "*may* have vehicles which were subject to the separate and distinct promises contained in both the new car warranty and the CPO coverage." (*Id.* (emphasis added).) It is clear from BMW's briefing, that any potential prejudice is purely speculative at this stage. It is premature to decide whether each plaintiff's claims will prove unmanageable for a jury and, therefore, should be tried separately. At this stage, the Court finds that any potential prejudice to BMW, if at all, is slight.

While BMW believes "there is no valid reason why these misjoined claims should be allowed to proceed in one lawsuit," (Memo at 267) the Court disagrees—as do other district courts facing this same issue. *See Schneider v. BMW of N. Am., LLC*, No. 18-cv-12239-IT, 2019 WL 4771567, at *3 (D. Mass. Sept. 27, 2019) (holding permissive joinder was appropriate because the plaintiff's claims against BMW arose out of the same set of occurrences); *Harris v. BMW of N. Am., LLC*, No. 4:19-CV-00016, 2019 WL 4861379, at *4 (E.D. Texas Oct. 2, 2019) ("To be sure,

[p]laintiffs are properly joined because their claims [against BMW] arise out of the same transaction, occurrence, or series of transactions or occurrences."); *Loy v. BMW of N. Am., LLC*, No. 4:19-CV-0184 JAR, 2019 WL 6250844, at *5 (E.D. Mo. Nov. 22, 2019) (holding that plaintiffs were properly joined under Rule 20(a)). Because plaintiffs' claims arise out of the same series of occurrences, and common questions of law and fact will arise in the action, permissive joinder—at least for discovery purposes—is appropriate.

### iv. Venue

Finally, BMW asserts that venue is not proper for four of the plaintiffs who do not reside in the Northern District of Ohio. (Memo at 267.) The Court notes that BMW's motion does not move to transfer or dismiss these claims based on improper venue. Instead, BMW simply states "[i]f this court severs this action, these [four] plaintiffs *likely* would not remain in the Northern District of Ohio. (Memo at 267 (emphasis added).) As stated above, plaintiffs are properly joined pursuant to Rule 20. Further, at this stage there is simply not enough information to determine whether venue is improper, as BMW appears to acknowledge. (*Id.* ("[P]laintiffs *likely* would not remain…." (emphasis added).)

It may be that, as the record develops, venue proves improper for some plaintiffs. However, plaintiffs have pleaded that venue is proper because "a substantial part of the events giving rise to the [p]laintiffs' claims occurred within this District; this District is where [d]efendant directs and controls warranty repairs on covered vehicles and this [d]istrict is where [d]efendant made repeated misrepresentations to [p]laintiffs and where [d]efendant concealed certain material information from [p]laintiffs." (Am. Compl. ¶ 5.) Other than stating that several plaintiffs live outside this District, BMW has not put forth facts challenging plaintiffs' assertion that the events giving rise to this action occurred within this District. And at this juncture, the Court "must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Baxter Bailey & Assocs., Inc. v.*

*Powers & Stinson, Inc.*, No. 14-3012, 2015 WL 12867931, at *1 (W.D. Tenn. Apr. 8, 2015) (internal quotation marks and citation omitted). If venue proves improper, BMW can move for dismissal or change of venue at that time.

The Court next examines whether the plaintiffs meet the Warranty Act's amount-in-controversy requirement and whether plaintiffs' claims are barred by the statute of limitations.

### B. Motion to Dismiss

#### i. Standard of Review

BMW seeks to dismiss plaintiffs' claims but does not identify which rule it bases its motion upon. The Court presumes that BMW's dismissal request related to the Warranty Act's amount-in-controversy requirement is predicated on Rule 12(b)(1)—lack of subject matter jurisdiction.[5] Rule 12(b)(1) motions can either "challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citation omitted). A facial attack "goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Id.* BMW's motion is a facial attack—challenging whether plaintiffs have met the Warranty Act's requirements, not whether the Warranty Act confers federal jurisdiction apart from the pleadings—and, as such, the Court takes the allegations in the complaint as true. *See McLeod v. Mich. Dep't of Treasury*, No. 11-15633, 2012 WL 2458405, at *1 (E.D. Mich. June 5, 2012) ("[W]here the moving party makes a facial attack based on subject matter jurisdiction, the standard is essentially the same as that under Rule 12(b)(6)….").

---

[5] This presumption is based on BMW's motion, which states "once these matters are severed, if they are re-filed in federal court as individual lawsuits, BMW NA will seek to dismiss them for lack of subject matter jurisdiction." (Memo at 259.)

When analyzing a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and construe the complaint in the light most favorably to the nonmoving party. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007); *see also Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). Dismissal will only be proper if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Bloch*, 156 F.3d at 677 (internal citation and quotation marks omitted).

It is well settled that a federal case will not be dismissed on amount-in-controversy grounds "unless it appears that the plaintiff's assertion of the amount in controversy was made in bad faith. A showing of bad faith is made if the defendant demonstrates 'to a legal certainty that the original claim[] was really for less than the amount-in-controversy requirement.'" *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008) (quoting *Gafford v. Gen Elec. Co.*, 997 F.2d 150, 157 (6th Cir. 1993)); *see also Rosen v. Chrysler Corp.*, 205 F.3d 918, 920–21 (6th Cir. 2000) ("[T]he general rule is that the amount claimed by a plaintiff in his complaint determines the amount in controversy, unless it appears to a legal certainty that the claim is for less than the jurisdictional amount.") (citations omitted). "Under the legal certainty test, federal subject matter jurisdiction exists 'if there is a probability that the value of the matter in controversy exceeds the jurisdictional amount.'" *Schultz*, 512 F.3d at 756. (quoting *Kovacs v. Chesley*, 406 F.3d 393, 397 (6th Cir. 2005)). For BMW to prevail on its motion to dismiss, it must demonstrate to a legal certainty that plaintiffs would be unable to meet the Warranty Act's amount-in-controversy requirement. *See id.* at 756–57. BMW has not met this burden.

### ii. The Warranty Act; Amount in Controversy

The Warranty Act "is a somewhat unique federal statute in that merely alleging a violation of the act is insufficient to confer federal question jurisdiction; a separate $50,000 amount in

controversy requirement must also be satisfied." *Id.* at 757. In relevant part, the Warranty Act provides "[n]o claim shall be cognizable in a suit brought under [the Warranty Act] … if the amount in controversy is less than the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of *all claims* to be determined in this suit…." 15 U.S.C. § 2310(d)(3)(B) (emphasis added). At the outset, the Court notes that "[u]nder the plain language of the [Warranty Act], multiple plaintiffs' claims may be aggregated in determining the total amount in controversy." *Schneider*, 2019 WL 4771567, at *3 (citing 15 U.S.C. § 2310(d)(3)(B)). Individual claims may be aggregated to satisfy the Warranty Act's amount-in-controversy requirement "if the claims satisfy the requirements for joinder under Rule 20." *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 242–43 (2d Cir. 1986). Because plaintiffs' claims are properly joined, their damages may be aggregated to meet the Warranty Act's $50,000 jurisdictional threshold. *See Loy*, 2019 WL 6250844, at *6.

In support of dismissal, BMW relies on the calculations formulated in *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402 (7th Cir. 2004) and *Golden v. Gorno Bros.*, 410 F.3d 879 (6th Cir. 2005).[6] In *Golden*, the Sixth Circuit outlined the formula for determining whether there is at least $50,000 in controversy, as required by the Warranty Act: "the price of a replacement vehicle [the vehicle's original purchase price], minus both the present value of the allegedly defective car and the value that the plaintiff received from the use of the allegedly defective car." *Golden*, 410 F.3d at 883 (quoting *Schimmer*, 384 F.3d at 405–06).

Under this formula, the Court starts with the original purchase price (the cost of a replacement vehicle) of the Vehicles—$38,688.80 for Grover (Am. Compl. ¶ 11), $57,188.17 for Williams (Am. Compl. ¶ 19), $48,383.50 for Walling (Am. Compl. ¶ 27), $91,239.20 for Cribbs

---

[6] In *Golden*, the Sixth Circuit adopted the Seventh Circuit's reasoning in *Schimmer* for properly "determining the amount in controversy" under the Warranty Act for revocation-of-acceptance claims. *See Golden*, 410 F.3d at 885.

(Am. Compl. ¶ 38), $48,424.00 for Massey (Am. Compl. ¶ 46), $58,473.79 for Webb (Am. Compl. ¶ 54), and $65,000.00 for Jarvis (Am. Compl. ¶ 64). From these figures, the Court must deduct the present value of the Vehicles and then further reduce that number by the value that the plaintiffs obtained from their use of the Vehicles. BMW relies on Kelly Blue Book ("KBB") to derive a present value of the Vehicles. However, even assuming *arguendo* that KBB accurately designates the Vehicles' present value, BMW only provides the KBB value for Williams's vehicle. The Court is left to speculate on the present value of the other Vehicles. As such, BMW has failed to demonstrate to a legal certainty that plaintiffs cannot meet the Warranty Act's amount-in-controversy requirement.

Even if BMW had provided enough data to conduct a *Golden* analysis, the Court notes that BMW's proposed methodology for calculating the value plaintiffs derived from use of the Vehicles is flawed.[7] Using Williams's vehicle as an exemplar, BMW argues that the amount in controversy should be calculated as follows:

$57,188.17 (purchase price)
- $20,535.00 (maximum present value of the vehicle with typical miles per KBB)
- $36,653.17 (calculation for offset for nearly 9 years of plaintiff's usage)
+ $2,200.00 (in out-of-pocket costs)

_____

$2,200 (amount in controversy)

(Memo at 261.) BMW does not cite any Sixth Circuit precedent indicating how offset for a plaintiff's usage should be calculated. Indeed, the Seventh Circuit has stated it has "no way of knowing" how to calculate the value that a plaintiff obtained from the use of his or her car. *Schimmer*, 384 F.3d at 406. But apparently BMW thinks that offset for usage ought to be the difference between the purchase price and the present value of the vehicle. That cannot be. Under

---

[7] Several other district courts share this concern. *See Carroll v. BMW of N. Am., LLC*, No 1:10-cv-00224-JMS-TAB, 2019 WL 2059619, at *5 (S.D. Ind. May 9, 2019) (rejecting BMW's formula for calculating the value a plaintiff obtained from driving the defective vehicle); *see also Loy*, 2019 WL 6250844, at *6 (taking "issue with BMW's calculations" under the *Golden* formula).

such a calculation, the amount in controversy—excluding consequential and other damages allowed under state law—will always be zero.[8] The Court need not determine how to properly calculate the offset for usage under the Warranty Act because BMW has failed to demonstrate to a legal certainty that plaintiffs would be unable to recover at least $50,000 were they to succeed on their claims against BMW. *See Schultz*, 512 F.3d at 756–57; *see also Bennett v. CMH Homes, Inc.*, 770 F.3d 511, 514 n.2 (6th Cir. 2014) (the Sixth Circuit is permissive with the Warranty Act's amount-in-controversy requirement, and defendant has the burden to prove to a legal certainty the that amount-in-controversy requirement has not been satisfied).

In its reply brief, BMW correctly identifies that the Sixth Circuit calculates the amount in controversy under the Warranty Act differently depending on whether a plaintiff seeks revocation of acceptance or rescission. (Reply at 455.) When plaintiff only seeks to revoke acceptance, the amount in controversy is calculated using the *Golden* formula. If a plaintiff seeks rescission, however, *Harden v. Jayco, Inc.*, 496 F.3d 579, 582 (6th Cir. 2007) controls—not *Golden*. Here, because plaintiffs seek both revocation of acceptance and remedies akin to rescission—a refund of the full contract price—a brief look at *Harden* is appropriate.

In *Harden*, the plaintiff purchased a recreational vehicle ("RV") for $51,451.22. *Harden*, 496 F.3d at 580. Following his purchase, Harden returned the RV several times for repair of various defects. *Id.* Approximately two years later, Harden sued the RV manufacturers, asserting federal claims under the Warranty Act and several state-law claims. *Id.* On appeal, the Sixth Circuit raised the issue of jurisdiction, questioning whether the case satisfied the Warranty Act's amount-in-controversy requirement. *Id.* at 581. The Sixth Circuit determined that the *Golden* Court

---

[8] BMW offers "[a]n alternative" method for calculating the amount in controversy—purchase price, minus value of offset for usage per KBB, plus out-of-pocket costs. (Memo at 262.) This methodology contravenes the *Golden* formula by omitting the vehicle's current value from the equation. As such, the Court may not consider BMW's proposed alternative valuation.

distinguished rescission claims from revocation-of-acceptance claims and, therefore, held that the two types of claims should be analyzed differently. *Id.* at 582. "[I]f only Harden's revocation-of-acceptance claim were at issue, the formula laid out in *Golden* would clearly control." *Id.* However, because Harden asserted other relevant claims, namely breach of contract requesting cancellation of his contract, the remedy he sought was "more akin" to rescission than revocation. *Id.* Because Harden sought the remedy of rescission, the Sixth Circuit held that the amount in controversy was determined by "the amount of [the] contract, without offset." *Id.*

In the case *sub judice*, plaintiffs' requested relief includes, *inter alia*, revocation of acceptance and "a refund of the full contract prices…." (Am. Compl. at 152.) Here, as in *Harden*, plaintiffs' amended complaint seeks both revocation and a remedy "akin" to rescission—a refund of the full contract prices. A number courts in this circuit have held that "*Harden* controls over *Golden* in determining the amount in controversy" when the complaint "asserts a claim that [d]efendants breached an express warranty that was part of the parties' contract" and requests a refund of the full contract price as one of the remedies for the alleged breach. *Harris v. Gulf Stream Coach, Inc.*, 547 F. Supp. 2d 765, 770 (E.D. Mich. 2008); *Luna v. Ford Motor Co.*, No. 3:06-0658, 2008 WL 276484, at *3 (M.D. Tenn. Jan. 29, 2008) (holding that a complaint's request for relief demanding defendant "repurchase the vehicle from the [p]laintiff for the exact price paid" was equivalent to a demand for rescission such that *Harden* controlled the amount-in-controversy inquiry).

Here, like in *Harris* and *Luna*, the complaint demands more than revocation of acceptance. Plaintiffs request revocation of acceptance *and* a refund of the full contract price. (*See* Am. Compl. at 152.) Under *Harden*, the amount in controversy would be the full contract price of the Vehicles which, when aggregated, easily exceeds the Warranty Act's amount-in-controversy mandate. Nevertheless, the Court finds it unnecessary to determine whether the *Golden* or *Harden* formula

ultimately applies because, under either formula, BMW has failed to prove to a legal certainty that plaintiffs have not satisfied the amount-in-controversy requirement when the plaintiffs' claims are joined.

### C. Statute of Limitations

BMW also asserts that plaintiffs' claims must be dismissed as untimely—presumably under Rule 12(b)(6). For their part, plaintiffs argue that their claims are timely and, in the alternative, the statute of limitations was tolled under various tolling theories. As an initial matter, the Court notes that the statute of limitations is an affirmative defense and "a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim[.]" *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (citing Fed. R. Civ. P 8(a)). As such, a motion to dismiss is usually an "'inappropriate vehicle' for dismissing a claim based upon a statute of limitations." *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 464 (6th Cir. 2013) (quoting *Cataldo*, 676 F.3d at 547); *United States v. Carell*, 681 F. Supp. 2d 874, 883 (M.D. Tenn. 2009) ("[A] motion to dismiss based on the statute of limitations should be denied if any issues of fact are involved.") (citation omitted). Because BMW raised the statute of limitations as an affirmative defense through a motion to dismiss—as opposed to summary judgement—plaintiffs need not prove at this stage that the statute of limitations was tolled. *See Kirkwood v. Vickery*, No. 4:17-cv-00086-JHM, 2018 WL 1189411, at *2 (W.D. Ky. Mar. 7, 2018) (citing *Anderson v. City of E. Cleveland*, No. 1:12 CV 3020, 2013 WL 1910410, at *3 (N.D. Ohio May 8, 2013)). To avoid dismissal, plaintiffs' complaint must simply assert facts showing that it is plausible that their claims are timely or that the statute of limitations was tolled. *Id.*

### i. Breach of Express Warranty

The Court begins its analysis with plaintiffs' first and third causes of action, breach of express warranties pursuant to the Warranty Act and under Ohio Rev. Code § 1302.26. BMW

argues that "[p]laintiffs' breach of warranty/Magnuson-Moss claims are barred by the four-year statue of limitations contained in [Ohio Rev. Code] § 1302.98…." (Mot. at 253.) Because the Warranty Act does not contain an applicable statute of limitations, "the statute of limitations controlling the cause of action or mandated by the forum state must be utilized." *Zaremba v. Marvin Lumber & Cedar Co.*, 458 F. Supp. 2d 545, 551–52 (N.D. Ohio 2006). Therefore, if plaintiffs' express warranty claims are untimely under Ohio law, so too are their express warranty claims under the Warranty Act.

Ohio has a four-year statute of limitations for claims related to the sale of goods. *See Siriano v. Goodman Mfg. Co.*, No. 2:14-cv-1131, 2015 WL 12748033, at *5 (S.D. Ohio Aug. 18, 2015) (citing Ohio Rev. Code § 1302.98(A)). The parties do not dispute the duration of the statute of limitations but disagree as to when the cause of action accrued. Under the statute:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.

Ohio Rev. Code § 1302.98(B). BMW asserts that any express warranty claims accrued when tender of delivery was made, i.e. when the Vehicles were purchased new by the original owners. (*See* Memo at 268.) The Vehicles were all purchased new more than four years before this action was commenced on January 2, 2019. (*See id.* at 269). Plaintiffs, on the other hand, argue that the four-year statute of limitations began running when they presented their Vehicles to BMW and the dealerships refused to perform repairs on the defective engine. (Opp'n at 445.)

Ohio courts have struggled with this precise issue; whether a "repair and replace" warranty falls within the "future performance" exception of § 1302.98(B), or whether repair or replace language is simply a limitation on available remedies. *Zaremba*, 458 F. Supp. 2d at 550. BMW

primarily relies on *Zaremba* and *Allis-Chalmers Credit Corp. v. Herbolt*, 479 N.E.2d 293 (Ohio 1984) for the proposition that repair or replace language is not a warranty extending to future performance and, therefore, plaintiffs' breach of warranty claims accrued at tender of delivery. (Memo at 268.) For their part, plaintiffs rely on *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 502 (S.D. Ohio 2012), which analyzed *Zaremba* and *Allis-Chalmers* and found that they "embod[ied] the proper interpretation of Ohio [breach of warranty] law." The Court finds the *Allen* Court's analysis instructive.

In *Allen*, the plaintiff purchased doors and windows from defendant, Andersen Windows, Inc. ("Andersen"). The windows "came with an express limited warranty, which provided twenty-year coverage for glass and ten-year coverage for products and components other than glass." *Allen*, 913 F. Supp. 2d at 496. After the windows were installed, the plaintiff noticed mold around one of the windows in her home and notified Andersen. Andersen repaired the window's sash but told plaintiff that the mold was the result of her house settling, not defective windows. *Id.* Ten years after her original purchase, the plaintiff requested that Andersen replace all her windows due to mold. *Id.* Plaintiff brought suit—fourteen years after her purchase—alleging, *inter alia*, breach of express warranty. *Id.* at 497. Andersen moved to dismiss the breach of express warranty claim on statute-of-limitations grounds. *Id.* at 499–500.

Like the parties here, Andersen asserted that the statute of limitations began to run when the windows were delivered; whereas the plaintiff urged that her claims accrued when she discovered the breach. *See id.* at 500. The court analyzed the Ohio courts' circuitous history with the meaning of "future performance" under § 1302.98(B) as it relates to repair-or-replace clauses. *See id.* at 501–03. After examining the language in Andersen's limited warranty, the court— following *Zaremba* and *Allis-Chalmers*—held that the repair or replace language in the warranty did not constitute a warranty of future performance within the meaning of § 1302.98(B). "Thus, to

the extent that Allen claim[ed] that Andersen breached its express warranty by providing defective windows, such a claim [was] time-barred." *Id.* at 504. However, upon further review of the complaint, the court found that "Allen did not limit her express warranty claim to simply the theory that Andersen failed to deliver windows free of defects." *Id.* Instead, part of Allen's breach of warranty claim was "based on a theory that Andersen failed to comply with [its] 'repair or replace' obligations…." *Id.* Therefore, where a complaint alleges breach of warranty based upon the failure to repair or replace—rather than based upon the condition of the product when tendered—the promise to repair is an independent obligation that is breached when the warrantor fails to repair. *Id.* (citing cases).

Plaintiffs' breach of warranty claim—like the claim in *Allen*—is based on a theory that BMW failed to comply with its repair-or-replace obligations. Specifically, plaintiffs allege that they notified BMW dealerships of the defect during the warranty period but were told the excessive oil consumption "was normal and did not warranty a repair." (*See* Am. Compl. ¶¶ 13, 14, 21, 22, 29, 30, 40, 41, 56, 57, 66, 67.) Unlike *Allen*, however, neither party attached copies of the warranties at issue to their pleadings.[9] While the parties agree the warranty contains a repair-or-replace provision, it does not mean that another provision cannot satisfy the "future performance" exception under Ohio Rev. Code 1302.98(B). *Siriano*, 2015 WL 12748033, at *6 ("[R]epair-or-

---

[9] BMW cites to an online copy of the 2018 New Vehicle Limited Warranty for the BMW 2 Series, 4 Series, and 6 Series. (*See* Memo at 263 n.4.) However, this warranty is not applicable to the present case because the Vehicles are all models other than those listed in the 2018 warranty document and the Vehicles were all manufactured prior to 2018. Neither party claims that the 2018 warranty is identical to the warranties at issue in this case. BMW also cites to a website related to the Certified Pre-Owned Protection Plan. (*See* Memo at 263 n.5.) But this citation is no more helpful. Other than stating that the plan "[c]overs you for 1 year" after the expiration of the New Vehicle Limited Warranty and the plan "provides specific coverage against defects in material and workmanship[,]" the website does not provide any details of the coverage. Further, it appears that the plans' coverage may have recently changed. The website states "[s]ee what is not covered for BMW Certified Vehicles retailed on or after 9/1/2017." Because these citations do not relate to the specific warranties at issue in this case (i.e. they are not the warranties referenced within the four corners of the complaint), the Court may not consider this extrinsic evidence when ruling on the motion to dismiss. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein.").

replace limitations and future performance warranties are not mutually exclusive."). Because the future performance exception turns on the precise warranty language at issue, and such language is not included in the amended complaint (nor was it required to be), the Court is unable to determine whether plaintiffs' claims accrued at tender of delivery or upon discovery of the defect. *See* 2 The Law of Prod. Warranties PRODWARR § 11:4 (comparing repair-or-replace provisions that extend to future performance of the *goods*, to those that that extend to future performance of the *warrantor*); *see also Siriano*, 2015 WL 12748033, at *6 (reviewing the limited warranty's wording to determine that, in spite of a repair-or-replace clause, another clause in the warranty satisfied the "future performance" exception). In light of this, the Court denies BMW's motion with regard to the breach of express warranty claims. Further, as explained below, the Court finds that plaintiffs have plausibly alleged grounds upon which the statute of limitations was tolled on all plaintiffs' claims.

### a. Fraudulent Concealment Tolling

"[U]nder certain circumstances Ohio law recognizes that the concealment of a cause of action can toll that statute of limitations." *Phelps v. Lengyel*, 237 F. Supp. 2d 829, 836 (N.D. Ohio 2002) (citation omitted). Fraudulent concealment is one of those circumstances. *Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-cv-00018, 2006 WL 3359448, at *6 (N.D. Ohio Nov. 17, 2006). To toll the statute of limitations based on fraudulent concealment, "[a] plaintiff must show '(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts.'" *Hamilton Cty. Bd. of Comm'rs v. Nat'l Football League*, 491 F.3d 310, 315 (6th Cir. 2007) (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975)). The question of whether the statute of limitations is tolled due to fraudulent concealment is generally a question of fact not suitable for dismissal at

the pleading stage. *See Phelps*, 237 F. Supp. 2d at 836; *see also Hometown Health Plan v. Aultman Health Found.*, No. 2006 CV 06 0350, 2009 WL 1806759, at ¶ 7 (Tuscarawas Ct. Com. Pl. Apr. 15, 2009).

Plaintiffs argue that their claims are subject to fraudulent concealment tolling "because of [BMW's] knowing and active concealment of the fact that the subject vehicles' engines contain a defect." (*See* Am. Compl. ¶ 127.) Specifically, BMW was aware of the defect in 2008 (*Id.* ¶ 118) but instead of remedying the defect, BMW took several affirmative steps to conceal it. As part of a campaign to conceal the engine defect, BMW issued a TSB which stated, "additional engine oil consumption of a turbocharged engine … is normal and not a defect[.]" (*Id.* ¶ 105.) BMW reduced the number of consumer complaints by instructing service technicians to simply overfill the engine oil level. (*Id.* at ¶ 104.) Consumers could not reasonably discover the engine defect because BMW had exclusive access to facts related to the defect. (*Id.* at ¶ 100.) Plaintiffs diligently presented the oil consumption issue to BMW but were told that excessive oil consumption was normal and not the result of a defect.[10] (*Id.* at ¶¶ 13, 14, 21, 22, 29, 30, 40, 41, 56, 57, 66, 67.) At this stage, plaintiffs have asserted enough facts to plausibly indicate that fraudulent concealment tolling applies.[11][12]

---

[10] BMW asserts that "dealer statements are not attributable to BMW … because plaintiffs do not allege an agency/principal relationship and such relationships are not generally recognized." (Reply at 462.) But plaintiffs allege agency several times: "independently owned dealerships … are agents of BMW[]," (Am. Compl. ¶ 8); and "authorized dealers are agents for purpose of vehicle repairs, and knowledge of a defect reported to any such dealer can be imputed to [BMW]." (Am. Compl. ¶ 84.)

[11] Plaintiffs also meet the heightened pleading standard under Rule 9. *See* Fed. R. Civ. P. 9(b). The Sixth Circuit interprets Rule 9 as requiring plaintiffs to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (quotation marks omitted). Here, plaintiffs allege BMW told them, through authorized dealers and during the warranty period (Am. Compl. ¶¶ 13, 21, 29, 40, 48, 56, 66), that excessive oil consumption was normal and did not require a repair. (*Id.* ¶¶ 14, 22, 30, 41, 49, 57, 67.) As part of a fraudulent scheme, BMW issued TSB 11-01-13 which instructed service technicians to overfill N63 engines with oil. (*Id.* ¶¶ 104–05.) BMW intended to conceal the defect by changing the engine oil consumption specifications for N63 vehicles and representing it as a normal feature of BMW vehicles. (*Id.* ¶¶ 103, 105.) Plaintiffs were injured because the defect caused increased risk of a serious accident (*Id.* ¶ 117), increased out-of-pocket expenses (*Id.* ¶ 121), and significant depreciation in the Vehicles' value. (*Id.*)

[12] After reviewing the amended complaint, motion to dismiss, response, and reply, the Court finds that plaintiffs have plausibly alleged that the statute of limitations was tolled pursuant to class action tolling as well.

III.    **CONCLUSION**

For the reasons set forth above, BMW's motion to sever or dismiss (Doc. No. 17) is DENIED. Further, the Court hereby lifts the stay of discovery previously imposed by the Court's April 22, 2019 order. (*See* Doc. No. 16.)

**IT IS SO ORDERED**.

Dated: January 21, 2020

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**