# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| GARY GROVER, et al., | ) | CASE NO. 1:19-cv-12 |
| | ) | |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER REGARDING |
| BMW OF NORTH AMERICA, LLC, | ) | CROSS MOTIONS FOR |
| | ) | SUMMARY JUDGMENT |
| | ) | [Resolving Doc. Nos. 64, 65, 70, 76, |
| DEFENDANT. | ) | 77, 87, 92] |

This matter is before the Court on the cross motions of plaintiffs[1] (Doc. No. 77)[2] and defendant BMW of North America, LLC ("BMW") (Doc. No. 70) for summary judgment pursuant to Fed. R. Civ. P. 56 with respect to plaintiffs' amended complaint (Doc. No. 13). As detailed below, the motions are fully briefed and ripe for resolution.

For the reasons that follow, plaintiffs' motion is denied, and BMW's motion is granted in part and denied in part.

---

[1] There are seven (7) plaintiffs in this action: Gary Grover ("Grover"), Reginald Williams ("Williams"), Dana Walling ("Walling"), Joshua Cribbs ("Cribbs"), Wendy Massey ("Massey"), John Webb ("Webb"), and Parker Jarvis ("Jarvis"). Where appropriate, the Court will refer to these individuals collectively as "plaintiffs." The Court notes that the plaintiff identified in the amended complaint (Doc. No. 13) as Ava Littlejohn was dismissed from this action by the agreement of counsel for both sides. *See Grover v. BMW of N. Am., LLC*, 434 F. Supp. 3d 617, 621 n.1 (N.D. Ohio 2020). The Clerk is directed to indicate on the docket that Ava Littlejohn was terminated as a plaintiff as of January 21, 2020.

[2] The parties' briefing contains confidential information pursuant to the protective order in this case, and their filings regarding BMW's motion to strike consist of both public redacted documents and sealed unredacted documents. The document numbers herein refer to the sealed briefing documents.

## Background

All plaintiffs in this action purchased different models and model years of BMW vehicles from different sellers.[3] But the basic facts underlying each of plaintiffs' claims have a common core, and those common factual allegations and claims as set forth in the amended complaint may be summarized as follows. Plaintiffs claim that their BMW vehicles, all equipped with N63 engines, consumed excessive amounts of engine oil. When they raised this issue with their respective dealers during the warranty period, they were told that the oil consumption was normal. Plaintiffs dispute this contention, asserting that the oil consumption was excessive and caused by a manufacturing defect in the N63 engine which BMW did not remedy under warranty. (*See* Doc. No. 13 ¶¶ 14, 22, 30, 41, 49, 57, 67, 85, 89–90.)

Based upon these factual allegations common to all plaintiffs, plaintiffs assert four (4) causes of action. First, for breach of express warranty pursuant to the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq*. (*Id.* ¶¶ 142–148.) Second, for breach of implied warranty of merchantability pursuant to the MMWA, 15 U.S.C. § 2301, *et seq*. and Ohio Rev. Code § 1302.27. (*Id.* ¶¶ 149–155.) Third, for breach of express warranties pursuant to Ohio Rev. Code § 1302.26. (*Id.* ¶¶ 156–164.) And fourth, for violation of Ohio's Consumer Sales Practices Act ("CSPA") pursuant to Ohio Rev. Code § 1345.01 *et seq*. (*Id.* ¶¶ 165–186.)

---

[3] Grover purchased a 2013 BMW 550i (vehicle identification number ("VIN") WBAFU9C59DDY71145 ("Grover Vehicle")) for $38,688.80 from North Coast Auto Mall on July 28, 2016. (Doc. No. 13 ¶¶ 9–11.) Williams purchased a 2012 BMW 7 Series 750Lxi (VIN WBAKC8C59CC437484 ("Williams Vehicle")) for $57,188.17 from BMW Cleveland on June 27, 2016. (*Id.* ¶¶ 17–19.) Walling purchased a 2012 BMW 550i (VIN WBAFU9C53CC787388 ("Walling Vehicle")) for $48,383.50 from BMW Cleveland on June 9, 2015. (*Id.* ¶¶ 25–27.) Cribbs purchased a 2009 BMW X6 (VIN 5UXFG83549LZ94223 ("Cribbs Vehicle")) for $91,239.20 from Ganley BMW on November 2, 2009. (*Id.* ¶¶ 36–38.) Massey purchased a 2013 BMW X6 (VIN 5UXFG8C51DL591292 ("Massey Vehicle")) for $48,424.00 from Auto Brokers on June 4, 2015. (*Id.* ¶¶ 44–46.) Webb purchased a 2010 BMW 750li (VIN WBAKC6C51AC393336 ("Webb Vehicle")) for $58,473.79 from Ganley BMW on November 27, 2012. (*Id.* ¶¶ 52–54.) Jarvis purchased a 2012 BMW 750Lxi (VIN WBAKC8C51CC435101 ("Jarvis Vehicle")) for approximately $65,000.00 from Mag BMW of Dublin on December 24, 2014. (*Id.* ¶¶ 62–64.)

BMW moved to dismiss plaintiffs' claims on multiple grounds, including on the merits and the timeliness this action. The Court denied BMW's motion. *See Grover v. BMW of N. Am., LLC*, 434 F. Supp. 3d 617 (N.D. Ohio 2020). BMW also moved to exclude the testimony and opinion of plaintiffs' expert witness Darren Manzari ("Manzari") and the Court ruled on that motion in a separately published memorandum opinion and order filed contemporaneously herewith. Relevant to the instant opinion, the Court granted BMW's motion as to Manzari's testimony and opinions concerning concealment and determined that his opinion concerning the ordinary purpose of the subject vehicles (claim 2) was moot, given the Court's disposition of claim 2.

Both sides now seek summary judgment pursuant to Fed. R. Civ. P. 56. Plaintiffs seek partial summary judgment as to liability on their first, third, and fourth causes of action. (*See* Doc. No. 77.) BMW opposed plaintiffs' motion (Doc. No. 85), and plaintiffs filed a reply (Doc. No. 89).

BMW seeks summary judgment against each plaintiff on all four claims. (Doc. No. 70.) Plaintiffs opposed BMW's motion (Doc. No. 80), and BMW filed a reply (Doc. No. 93).

### Discussion

### A. Summary Judgment Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. *Id.*

In order to obtain summary judgment, the moving party must provide evidence to the court that demonstrates the absence of a genuine dispute as to any material fact. Once the moving party meets this initial burden, the opposing party must come forward with specific evidence showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson*, 477 U.S. at 250. The nonmoving party may oppose a summary judgment motion "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex*, 477 U.S. at 324. The Court must view all facts and evidence, and inferences that may be reasonably drawn therefrom, in favor of the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962).

General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "'The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (*quoting Anderson*, 477 U.S. at 252).

The district court's review on summary judgment is a threshold inquiry to determine whether there is the need for a trial due to genuine factual issues that must be resolved by a finder of fact because those issues may reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52; *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003).

Summary judgment is required:

> against a party who fails to make a showing sufficient to establish the existence of
> an element essential to that party's case, and on which that party will bear the
> burden of proof at trial. In such a situation, there can be no genuine issue as to any
> material fact, since a complete failure of proof concerning an essential element of
> the nonmoving party's case necessarily renders all other facts immaterial. The
> moving party is entitled to a judgment as a matter of law because the nonmoving
> party has failed to make a sufficient showing on an essential element of [his] case
> with respect to which [he] has the burden of proof.

*Celotex,* 477 U.S. at 322–23 (internal quotation marks and citation omitted).

The typical summary judgment standard of review "poses unique issues" when cross motions for summary judgment are filed. *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001). In such cases, the district court must evaluate each party's motion on its own merits, drawing all reasonable inferences against the moving party. *Id.* (citation omitted). If it is possible to draw inferences in either direction, then both motions for summary judgment should be denied. *Id.* at 592–93. The making of contradictory claims on summary judgment does not mean that if one is rejected the other must be accepted. *Id.*

Both BMW and plaintiffs contend that they are entitled to judgment on the merits of plaintiffs' claims. In addition, BMW contends that plaintiffs' claims are barred by the applicable statute of limitations.

### B.  Claims 1 and 3 - Express Warranty Claims

Both claims 1 and 3 assert claims for breach of express warranty, so the Court will address them together. In their first and third causes of action, plaintiffs claim breach of express warranty under the MMWA and Ohio Rev. Code § 1302.26, respectively—namely, that BMW failed to repair or replace a manufacturing defect in plaintiffs' vehicles' N63 engines that caused excessive oil consumption.

The MMWA "sets forth guidelines, procedures and requirements for warranties, written or implied, on consumer products." *Temple v. Fleetwood Enter., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005) (citing 15 U.S.C. §§ 2301–2312). "The MMWA creates a federal cause of action for violations of the MMWA itself and for breaches of warranty arising from state law." *Mayernik v. CertainTeed LLC*, 476 F. Supp. 3d 625, 631 (S.D. Ohio 2020) (citing *Kuns v. Ford Motor Co.*, 543 F. App'x 572, 575 (6th Cir. 2013); *Albright v. Sherwin-Williams Co.*, No. 1:17-cv-2513, 2019 WL 5307068, at *10 (N.D. Ohio Jan. 29, 2019) (The MMWA "is a vehicle to assert state law breach of warranty claims in federal court."); *Powell v. Airstream, Inc.*, 140 N.E.3d 1172, 1187 (Ohio Ct. App. 2019) ("The outcome of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims.") (applying Washington state law)). "'Therefore, the elements that a plaintiff must establish to pursue a cause of action for breach of warranty under the MMWA are the same as those required by Ohio law.'"[4] *Mayernik*, 476 F. Supp. 3d at 631 (quoting *Kuns*, 543 F. App'x at 57).

### 1. Genuine issues of material facts as to the merits of claims 1 and 3

Ohio law defines an express warranty as "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain[.]" Ohio Rev. Code § 1302.26(A)(1). "To establish a claim for breach of express warranty under Ohio law, plaintiff must prove: (1) the item in question was subject to a warranty; (2) the item did not conform to the warranty; (3) the seller was given a reasonable opportunity to cure any defects; and (4) the seller failed to cure the defects within a reasonable period of time or after a reasonable number of attempts." *Risner v. Regal Marine Indus., Inc.*, 8 F. Supp. 3d 959, 988 (S.D. Ohio 2014) (citing *Kuns,* 543 F. App'x at 575–76 (citing *Temple,* 133 F. App'x at 268)); *see also Caterpillar Fin.*

---

[4] This principle also applies to plaintiffs' second claim for breach of implied warranty under the MMWA and Ohio law.

*Servs. Corp. v. Harold Tatman & Son's Enter., Inc.*, 50 N.E.3d 955, 960 (Ohio Ct. App. 2015) ("To establish a claim for breach of express warranty under Ohio law, a plaintiff must show that: (1) a warranty existed; (2) the product failed to perform as warranted; (3) plaintiff provided the defendant with reasonable notice of the defect; and (4) plaintiff suffered injury as a result of the defect.") (citation omitted). As discussed below, except as to the first element of a breach of warranty claim under Ohio law, the parties have advanced material evidence on both sides disputing the remaining elements.

All of plaintiffs' vehicles were covered under either BMW's New Vehicle Limited Warranty[5] ("NVLW") or "Certified Pre-owned Limited Warranty[6] ("CPOW") or both for some period during plaintiffs' ownership of the subject vehicles.

| Plaintiff (purchase date) | Exp. Date of NVLW | Exp. Date of CPOW |
|---|---|---|
| Walling[7] (6/9/2015) | 1/1/2016 | 1/21/2018 |
| Williams[8] (6/27/2016) | 4/2/2016 | 4/2/2018 |
| Jarvis[9] (12/24/2014) | 1/20/2016 | 1/20/2018 |
| Grover[10] (7/28/2016) | 12/10/2016 | NA (vehicle purchased used) |
| Massey[11] (6/4/2015) | 7/31/2016 | NA (vehicle purchased used) |
| Webb[12] (11/27/2012) | 4/20/2014 | 4/20/2016 |
| Cribbs[13] (11/2/2009) | 11/2/2013 | NA (vehicle purchased new) |

---

[5] *See* Doc. No. 77-5.

[6] *See* Doc. No. 77-11.

[7] Doc. Nos. 70-2, 82 ¶¶ 1-5.

[8] The parties' statement of undisputed facts state that the purchase date is 6/27/2016, but in his deposition Williams states that he purchased his vehicle on 6/27/2015 with 49,518 miles—about 500 miles from the expiration of the NLVW due to mileage. (Doc. Nos. 70-2, 82 ¶¶ 22-23; *see also* Doc. No. 77-12 at 4-7.) The valve stem seals were replaced on the Williams Vehicle in November 2016 under the CPOW, when the vehicle had 78,083 miles. (Doc. Nos. 70-2, 82 ¶ 26.)

[9] Doc. Nos. 70-2, 82 ¶¶ 29-30.

[10] Doc. Nos. 70-2, 82 ¶¶ 34-35. The valve stem seals in the Grover Vehicle were replaced in October 2017 under a non-BMW aftermarket warranty. (Doc. Nos. 70-2, 82 ¶ 37.)

[11] Doc. Nos. 70-2, 82 ¶¶ 44-45.

[12] Doc. Nos. 70-2, 82 ¶¶ 51-53.

[13] Doc. Nos. 70-2, 82 ¶¶ 39-40.

"[T]he parties agree the warranty [on each subject vehicle] contains a repair-or-replace provision[.]" *Grover,* 434 F. Supp. 3d at 631–32. All plaintiffs claim that their vehicles consumed excessive amount of engine oil, which they brought to each dealer's attention during the warranty period, with the dealers telling them[14] the oil consumption was normal for an N63 engine.[15] But plaintiffs claim that the excessive oil consumption was due to a manufacturing defect and that

---

[14] BMW argues that it never directly told any plaintiff that the oil consumption of their N63 engines was normal and that any statements made to them by the dealerships are not attributable to BMW because the dealers are not agents of BMW and plaintiffs have advanced no evidence of agency. (Doc. No. 70-1 at 15-16 (citing *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1148 (Ohio 2007).) While it is generally true that dealerships are not the agent of the manufacturer, as plaintiffs point out, Ohio recognizes both apparent agency and agency by estoppel. (Doc. No. 80 at 6-7.) "The test for apparent authority is whether the complaining party acting as a reasonable person, would believe the agent had authority based on all the circumstances." *Tsirikos-Karapanos v. Ford Motor Co.*, 99 N.E.3d 1203, 1212 (Ohio Ct. App. Nov. 9, 2017) (internal quotations marks and citation omitted). With respect to agency by estoppel, "where a person, by acts or conduct, has caused or permitted another to appear to be his agent, he will be estopped to deny the agency with respect to third persons who deal with the apparent agent in good faith and in the exercise of reasonable prudence." *Agosto v. Leisure World Travel, Inc.*, 304 N.E.2d 910, 913 (Ohio Ct. App. 1973). It is undisputed that "[p]laintiffs generally testified that it was their understanding that a dealer can speak for BMW NA." (Doc. Nos. 70-2, 82 ¶ 66.) And BMW's corporate designee, Michael Murray, testified that BMW provides its dealers with specific directions, recommendations, and instructions on what should be communicated to consumers during warranty repairs and expects its dealers to follow those instructions. (Doc. No. 77-28 at 2–5.) BMW issued service bulletins to dealers concerning oil consumption issues with respect to the N63 engine stating that the N63 engine, "as part of [its] normal operation, will consume engine oil at a higher rate than a [non-turbocharged engine.]" (*See e.g.*, Doc. No. 69-3 ¶ 30.) Under Ohio law, "the existence of an agency relationship is a question of fact, rather than one of law[.]" *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 661 (6th Cir. 2005) (citing *McSweeney v. Jackson*, 691 N.E.2d 303, 307 (Ohio Ct. App. 1996)). Based upon the evidence advanced before the Court on the issue of agency, the Court concludes that there is a genuine dispute of material fact that must be resolved by the factfinder as to whether BMW dealerships are agents of BMW for purposes of warranty repair.

[15] *See e.g.,* Grover (Doc. No. 77-4 at 6–7); Jarvis (Doc. No. 77-9 at 7–8); Williams (Doc. No. 77-12 at 9–13); Walling (Doc. No. 77-14 at 9–14); Cribbs (Doc. No. 77-16 at 5); Massey (Doc. No. 77-19 at 26–27); Webb (Doc. No. 77-21 at 11–12).

BMW breached the express warranty in the NVLW and CPOW[16] by failing to repair or replace the manufacturing defect[17] in the N63 engines with which the subject vehicles were equipped.

Plaintiffs' expert Manzari opines that all of the subject vehicles in this action consumed excessive amounts of engine oil and that issue was caused by defective valve stem seals. (*See* Doc. No. 69-3 ¶¶ 15, 57–113.) For its part, BMW submits the report of its expert, Ron Clark ("Clark"). (Doc. No. 85-5.) Clark generally disputes Manzari's opinions regarding oil consumption in the N63 engine and the cause thereof, and specifically disputes Manzari's opinions that defective valve stem seals were the cause of the excessive oil consumption in plaintiffs' vehicles. (*See* Doc. No. 85-5 at 7–11.) For example, Clark contends that Manzari's opinion that plaintiffs' vehicles

---

[16] BMW argues on summary judgment that the CPOW is a service contract, not a warranty covered by the MMWA. In support, BMW cites *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 951 (Ill. Ct. App. 2005). (*See* Doc. No. 70-1 at 36–37).

> The Magnuson–Moss Act defines a service contract as 'a contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product.' 15 U.S.C. § 2301(8) (2000). Illinois courts have held that agreements that do not affirm the quality or workmanship of an automobile or warrant against any defects, but rather offer to repair certain defects not otherwise covered by a warranty and that may occur within a certain time period or certain number of miles, are to be construed as service contracts rather than warranties and that alleged breaches thereof are not actionable as breach of warranty claims.

*Evitts,* 834 N.E.2d at 950–51.

> Beyond this citation to a single case from another jurisdiction, BMW's briefing contains no analysis of the CPOW or Ohio law to support the argument that the CPOW at issue here is not a warranty under the MMWA. The Court is not required or obligated to conduct legal research and construct arguments on behalf of any party, and what has been provided to the Court is entirely insufficient upon which to grant BMW's motion for summary judgment on this issue, and it is denied.

[17] BMW contends that it is entitled to judgment on plaintiffs' claims for breach of express warranty by failing to correct design defects in the N63 engine because the NVLW covers repairs to correct defects in material or workmanship, not design defects. (Doc. No. 70-1 at 33–34.) In response, plaintiffs deny they claim that all N63 engines are defective or that the N63 engine is defectively designed. (Doc. No. 80 at 24.) Plaintiffs' amended complaint alleges that the N63 engine suffered from a "design/manufacturing defect," and the N63 engine "was designed to be BMW's next generation V8[.]" (*See* Doc. No. 13 ¶¶ 87,110.) The actual language in claims 1 and 3 does not claim that the N63 engine suffers from a design defect, but rather specifically claims that, in the NVLW and CPOW, BMW agreed to repair "original components found to be defective in material or workmanship under normal use and maintenance" and that, when presented with the subject vehicles for repair, BMW did not repair the oil consumption defect under warranty. (*See* Doc. No. 13 ¶¶ 157, 159.)

"consume[] too much oil is entirely speculative" and there is no evidence of defective valve stem seals. (*See* Doc. No. 85-5 at 7, 9–11.)

The parties' dueling expert reports are the foundation of their arguments in support of their respective motions for summary judgment on the merits of claims 1 and 3 for breach of express warranty and of their arguments in opposition to each other's motion. These opposing expert opinions address the very core of plaintiffs' claims. Such contradictory expert opinion evidence establishes a genuine dispute of material fact that must be resolved by a factfinder. *See Sanford v. Russell*, 387 F. Supp. 3d 774, 785 (E.D. Mich. 2019) (contradictory opinion evidence does not render an expert's testimony unreliable, but "merely establishes a fact dispute") (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)).

However, the parties' dueling expert reports are not the end of the discussion. In addition to its arguments in support of summary judgment on the merits of plaintiffs' express warranty claims, BMW also argues that claims 1 and 3 are barred by the statute of limitations.

### 2.  Genuine issue of material facts as to when the statute of limitations accrued

The MMWA does not contain an applicable statute of limitations. As a consequence, "the statute of limitations controlling the cause of action or mandated by the forum state must be utilized." *Zaremba v. Marvin Lumber & Cedar Co.*, 458 F. Supp. 2d 545, 551–52 (N.D. Ohio 2006). Therefore, the timeliness of plaintiffs' express warranty claims under Ohio law determines the timeliness of the MMWA claim.

The parties do not dispute that Ohio's four-year statute of limitations under Ohio Rev. Code § 1302.98(A) applies to plaintiffs' claims for breach of express warranty under Ohio law. Ohio Rev. Code § 1302.98(A) ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."); *see also Allen v. Andersen Windows, Inc.,* 913

F. Supp. 2d 490, 500 (S.D. Ohio 2012). But the parties dispute when plaintiffs' express warranty claims accrued.

Ohio Rev. Code § 1302.98(B) governs accrual of the four-year statute of limitations. It provides:

> (B) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.

### a. Repair and replace warranty

The NVLW and CPOW warranties are attached to the parties' motions for summary judgment and the language is not disputed. (*See* Doc. No. 77-5 at 4, 7, 10, 13, 16, 19, 22; Doc. No. 70-2, 82 ¶ 67; Doc. No. 77-11 at 4.) The NVLW warrants the BMW models at issue against defects in material or workmanship to the first retail purchaser and each subsequent purchaser for a period of 48 months or 50,000 miles, whichever occurs first, beginning on the date of the first retail sale or date the vehicle is first placed into service, and provides the following coverage:

> To obtain service under this warranty, the vehicle must be brought, upon discovery of a defect in material or workmanship, to the workshop of any authorized BMW center in the United States or Puerto Rico, during normal business hours. The BMW center will, without charge for parts or labor, either repair or replace the defective part(s) using new or authorized remanufactured parts. The decision to repair or replace said part(s) is solely the prerogative of BMW. Parts for which replacements are made become the property of BMW NA.

(*See* Doc. No. 77-5 at 10; Doc. No. 70-2, 82 ¶ 67.)

The CPOW extends the NVLW warranty two years or 50,000 miles, whichever occurs first, effective upon expiration of the NVLW, and provides the following coverage for non-excluded components:[18]

> To obtain service under the Certified Pre-Owned BMW Limited Warranty, the vehicle must be brought, upon discovery of a defect in materials or workmanship of a covered part or component, to the workshop of any authorized BMW center during normal business hours. The center will either repair or replace the covered parts using either new or authorized remanufactured parts. The decision to repair or replace part(s) is solely the prerogative of BMW NA. Parts for which replacements are made become the property of BMW NA.

(*See* Doc. No. 77-11 at 4.)

In the first and third claims for breach of express warranty, plaintiffs allege that BMW breached the repair and replace warranties in the NVLW and CPOW by failing to repair the alleged manufacturing defect in their N63 engines causing excessive oil consumption in the subject vehicles. "[U]nlike claims for breach of warranty based upon the condition of the product, a claim for breach based upon the failure to 'repair or replace' does not accrue upon delivery [of the product]: 'the promise to repair is an independent obligation that is not breached until the seller fails to repair.'" *Allen*, 913 F. Supp. 2d at 504 (citation omitted); *see also Malkamaki v. Sea Ray Boats, Inc.*, 411 F. Supp. 2d 737, 745 (N.D. Ohio 2005).

In its motion for summary judgment, BMW acknowledges that the latest that plaintiffs would be able to assert a claim for breach of the repair or replace warranty would be the day the NVLW expired. (*See* Doc. No. 70-1 at 19.) On this basis, BMW contends that the latest Cribbs would be able to assert a repair or replace warranty claim for the Cribbs vehicle would be November 2, 2017, and the latest date for Webb to assert such a warranty claim would be April

---

[18] The certified pre-owned warranty plan is "a 'Named Exclusion' warranty, meaning items that are not covered are specified." (*See* Doc. No. 77-11 at 4–5.)

20, 2018.[19] This case was filed January 2, 2019, so BMW argues that the breach of express warranty claims asserted by Cribbs and Webb are barred by the four-year statute of limitations. Cribbs and Webb contend that their claims are not barred by the statute of limitations because of certain tolling provisions.[20] As to the remaining five plaintiffs, whose NVLWs expired in 2016, BMW acknowledges that "their breach of written warranty claims could potentially extend into 2020." (*Id.* at 19–20.)

### b. Future performance

Plaintiffs contend that the applicable warranties also contain a future performance provision which, under Ohio Rev. Code § 1302.98(B), defers accrual of the statute of limitations to discovery of the defect in the subject vehicle.

As a general rule, "repair-or-replace clauses themselves do not qualify as warranties extending to future performance of goods." *Jones v. Lubrizol Advanced Materials, Inc.*, 1:20-cv-511, -- F. Supp. 3d --, 2021 WL 4076837, at *14 (N.D. Ohio Sept. 8, 2021) (internal quotation marks omitted; citations omitted); *Young v. Carrier Corp.*, No. 4:14-cv-974, 2014 WL 6617650, at *5 (N.D. Ohio Nov. 21, 2014) (same) (citing *Allen*, 913 F. Supp. 2d at 501 ("Ohio federal and state courts hold that a promise to repair or replace defects for a specified time period is simply a *remedy* for the buyer and not a promise of future performance" of the goods under § 1302.98(B) (emphasis in original)). While the existence of a repair-or-replace provision does not itself trigger the future performance exception under § 1302.98(B), that does not mean that another provision

---

[19] The parties do not dispute that Webb's vehicle was also covered by a CPOW, which expired on April 20, 2016. (*See* Doc. Nos. 70-2, 82 ¶¶ 51–53.)

[20] For the reasons discussed below in Section E, the Court finds that there is a genuine dispute of material fact as to whether plaintiffs are entitled to tolling under the doctrine of fraudulent concealment.

in the vehicle warranties cannot satisfy that exception.[21] *See Grover*, 434 F. Supp 3d at 631–32 (citing *Siriano v. Goodman Mfg. Co.*, Case No. 2:14-cv-1131, 2015 WL 12748033, at *6 ("[R]epair-or-replace limitations and future performance warranties are not mutually exclusive.")).

Plaintiffs' argument that the "repair or replace" provision in the vehicle warranties should be construed to contain a future performance exception on the basis of the warranty language and *Standard Alliance Indus., Inc., v. Black Clawson Co.*, 587 F.2d 813 (6th Cir. 1978) is unavailing. (*See* Doc. No. 80 at 10–14.) *Standard Alliance* held that a repair and replace warranty provision supported a finding of future performance and triggered the discovery rule. Plaintiffs acknowledge that, at the time *Standard Alliance* was decided, there was no Ohio case law to guide the Sixth Circuit. Since that time, Ohio state courts have rejected that analysis. *See Allis-Chalmers Credit Corp. v. Herbolt*, 479 N.E.2d 293, 300–01 (Ohio Ct. App. 1984). And federal courts considering the issue have concluded that the Sixth Circuit in *Standard Alliance* would have reached a different decision if it had the benefit of subsequent Ohio state court decisions and have likewise ruled that repair and replace provisions themselves do not trigger future performance language within the

---

[21] The distinction between a repair and replace remedy that does not accrue until the warrantor fails to fulfill that obligation within the specified period of the warranty, and warranty language that triggers the future performance exception, is aptly explained in a treatise on the subject as referenced by this Court in *Grover*, 434 F. Supp. 3d at 632, and separately quoted by another branch of this Court:

> [J]ust because the warranty mentions a period of years, it does not necessarily extend to the future performance of the goods. If the warranty says, "Our widgets are guaranteed for five years from the date of sale; they will not malfunction at any time during that period," then the warranty explicitly extends to the future performance of the goods …. However, suppose the warranty says "Our widgets are guaranteed. If they malfunction within five years from the date of sale, we will repair or replace them at our expense." This warranty explicitly extends to the future performance of the warrantor. The time period relates only to the remedy. The warranty does not say that the widgets will not malfunction, but that the warrantor will resolve the problem in a certain way for a limited time if they do malfunction. Since the language concerning time focuses on the remedy to be given by the warrantor, rather than the future performance of the goods themselves, [the future performance exception of Ohio Rev. Code § 1302.98(B)] does not apply.

*Young*, 2014 WL 6617650, at *5 (emphasis removed and alteration added) (quoting 2 The Law of Prod. Warranties PRODWARR § 11:4).

meaning of § 1302.98(B). *See Allen*, 913 F. Supp. 2d at 501–03; *Zaremba*, 458 F. Supp. 2d at 550–51; *Siriano*, 2015 WL 12748033, at *5; *Timken Co. v. MTS Sys., Corp.*, 539 F. Supp. 3d 770, 790–91 (N.D. Ohio 2021). So the Court will examine the warranty for any other language that creates a future performance exception and triggers the discovery rule.

BMW warrants subject vehicles "against defects in materials or workmanship to the first retail purchaser, and each subsequent purchaser[,]" for a "warranty period" of "48 months or 50,000 miles, whichever occurs first." The warranty "[c]overage begins on the date of the first retail sale[.]" *See* Doc. No. 77-5 at 4. In order for the future performance discovery rule to extend Ohio's four-year statute of limitations for breach of an express warranty, the warranty must explicitly extend to future performance of the goods—that is, the warranty must provide that the product itself will be free from defects for a specific period of time and so discovery of the defect must await that passage of time. Here, BMW does not explicitly warrant that the subject vehicles will be free from defects for four years or 50,000 miles. Rather, the warranty language uses the present tense to warrant the subject vehicles against defects and, if a defect is discovered within the warranty period, BMW will repair or replace the defective part. *See Carroll v. BMW of N. Am., LLC*, No. 1:19-cv-224, 2021 WL 3474032, at *19 (although the warranty references a future date with respect to the time period of coverage, the warranty does not state that the BMW will be free from defects during that period but rather that defects occurring during that period will be repaired or replaced); *cf. Siriano*, 2015 WL 12748033, at *6–7 (finding that repair or replace language did not satisfy the future performance exception of Ohio's express warranty statute, but additional warranty language did: "[A]ll parts [of the HVAC unit] (including the compressor) are warranted for a period of 5 YEARS."); *see also Holbrook v. Louisiana-Pac. Corp.*, 533 F. App'x 493, 495 (6th Cir. 2013) (finding that warranty language expressly contained not only an obligation

to repair or replace, but a promise of future performance of the product: "In the first sentence of the ten-year written warranty, Louisiana–Pacific 'warrants its Trimboard, exclusive of finish, against delamination, checking, splitting, cracking and chipping of the basic substrate for a period of ten years from the date of installation under normal conditions of use and exposure....'").

The express warranty at issue here does not explicitly warrant that the subject vehicles themselves will be free from defect during the warranty period, and a warranty obligation to repair or replace a defective product within the warranty period does not guarantee future performance free from defect. *Allen*, 913 F. Supp. 2d at 502–03. Accordingly, the Court concludes that the NVLW and CPOW do not contain express provisions regarding the future performance of the subject vehicles, such as would trigger the discovery rule, and thus rejects plaintiffs' argument that the discovery rule applies to their express warranty claims.

### C. Claim 2 – Breach of Implied Warranty

In their second claim, plaintiffs assert a claim for breach of implied warranty of merchantability under 15 U.S.C. § 2301 of the MMWA and Ohio Rev. Code § 1302.27. Under Ohio law, "a seller of goods impliedly warrants that its products are of good and merchantable quality, fit and safe for the ordinary purposes for which the goods are intended." *Allen*, 913 F. Supp 2d at 505 (citing Ohio Rev. Code § 1302.27). Plaintiffs allege that BMW breached the implied warranty of merchantability because the subject vehicles were not in merchantable condition when purchased by plaintiffs and are unfit for their ordinary purpose. (*See* Doc. No. 13 at ¶¶ 149–55.) BMW, but not plaintiffs, moves for summary judgment on claim 2 of the amended complaint as to all plaintiffs on the ground that their implied warranty claim is barred by the statute of limitations. (*See* Doc. No. 70-1 at 20–21.)

16

The statute of limitations for breach of implied warranty under the MMWA and Ohio Rev. Code § 1302.27 is governed by the four-year statute of limitations contained in Ohio Rev. Code § 1302.98(A). *See Allen*, 913 F. Supp. 2d at 505. "Implied warranties, by definition, do not explicitly extend to future performance, thus removing any possibility that the discovery rule of Ohio Rev. Code § 1302.98(B) could toll the limitations period in this case." *Id.* (citations omitted). Thus, a claim for breach of implied warranty accrues at the time of delivery. *Id.* ("Allen therefore had to bring her claim for breach of the implied warranties within four years of the time the subject windows were delivered.").

Applying the language of the caselaw and statute to plaintiffs' vehicles, BMW argues on summary judgment that plaintiffs must bring their implied warranty claims within four years from the date of the original tender of delivery of their vehicles. (Doc. No. 70-1 at 20 (citing *Allen*, 913 F. Supp. 2d at 505).) The original delivery date of plaintiffs' vehicles is undisputed.[22] The instant action was filed on January 2, 2019, more than four years after the original delivery date of each of the subject vehicles.

Plaintiffs' opposition to BMW's motion for summary judgment on plaintiffs' second claim for breach of implied warranty is silent, and plaintiffs themselves do not seek summary judgment on their implied warranty claim.[23] In response to a motion for summary judgment advancing facts upon which the moving party maintains it is entitled as a matter of law to judgment on a claim, the non-moving party must come forward and make a showing that there is a genuine dispute that renders judgment on that claim inappropriate. Plaintiffs have not even attempted to do so, nor have

---

[22] Walling (January 21, 2012) (Doc. Nos. 70-2, 82 ¶ 2); Williams (April 2, 2012) (*id.* ¶ 23); Jarvis (January 20, 2012) (*id.* ¶ 30); Grover (December 10, 2012) (*id.* ¶ 35); Cribbs (November 2, 2009) (*id.* ¶ 39); Massey (July 31, 2012) (*id.* ¶ 45); Webb (April 20, 2010) (*id.* ¶ 52).

[23] *See* Doc. No. 77 and Doc. No. 89 at 7 n.3.

plaintiffs asserted a legal argument that BMW is not entitled to summary judgment on plaintiffs' second claim.

On summary judgment, the Court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street,* 886 F.2d at 1479–80. Nor is the Court required to construct legal arguments on plaintiffs' behalf.[24]

Accordingly, the Court finds that BMW is entitled to judgment as a matter of law on plaintiffs' second claim for breach of implied warranty under the MMWA and Ohio law, and BMW's motion for summary judgment on plaintiffs' second claim is granted.

### D.  Claim 4 – Breach of Ohio's Consumer Sales Protection Act

In their fourth claim, plaintiffs allege that BMW violated Ohio's Consumer Sales Practices Act ("CSPA"), Ohio Rev. Code § 1345.01 *et seq.*, when BMW committed unfair and deceptive sales practices by misrepresenting to plaintiffs at the time of purchase that their vehicles had characteristics, uses, and benefits the vehicles did not have, and by failing to disclose that information. Specifically, plaintiffs claim that BMW knew "at the time of [the subject vehicles'] sale" that the N63 engine in those vehicles had defects that caused excessive oil consumption and resulting safety concerns and premature engine failure but failed to disclose the defective nature of the N63 engines to plaintiffs at the time of purchase. (*See* Doc. No. 13 at ¶¶ 171–180.) Plaintiffs

---

[24] *See McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1098 (S.D. Ind. 2008) (citing among authority *John v. Barron,* 897 F.2d 1387, 1393 (7th Cir.1990) (providing that a court "is not obligated to research and construct legal arguments open to parties, especially when they are represented by counsel")); *see also Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 11-cv-2450, 2014 WL 4413768, at *11 (N.D. Ill. Sept. 5, 2014) ("[I]t is well-established that a district court is not required to scour the summary judgment record to identify evidence that can defeat a summary judgment motion or to piece together a party's factual or legal arguments for her.") (citing *Ritchie v. Glidden Co.,* 242 F.3d 714, 723 (7th Cir. 2001)), *aff'd,* 811 F.3d 866 (7th Cir. 2016); *Peery v. CSB Behav. Health Sys.*, No. CV106-172, 2008 WL 4935598, at *2 (S.D. Ga. Nov. 18, 2008) ("The job of this Court is to consider the parties' arguments in relation to a given motion and render a ruling on that basis; it is not to comb the multitude of filings by each party and find every potential argument that could be distilled from these documents.") (citing *Resol. Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995)) (holding that a district court is not required to distill all potential legal arguments from the materials before it and the onus is on the parties to formulate legal arguments and present them to the district court for consideration).

also claim that BMW violated the CSPA by breaching the implied warranty concerning their vehicles. (Doc. No. 70-1 (citing Doc. No. 13 ¶ 182).)

The applicable statute of limitations for an CSPA claim is two years "after the occurrence of the violation which is the subject of the suit[.]" *See* Ohio Rev. Code § 1345.10(C);[25] *see also Allen*, 913 F. Supp. 2d at 506; *Zaremba*, 458 F. Supp. 2d at 552; *Price v. KNL Custom Homes, Inc.*, 28 N.E.3d 640, 646 (Ohio Ct. App. 2015). No discovery rule applies to claims for damages under the CSPA, and Ohio Rev. Code § 1345.10(C) provides for an "absolute" two-year statute of limitations for damage actions. *Price*, 28 N.E.3d at 646–47 (quoting *Montoney v. Lincoln Logs, Ltd.*, No. 06AP-284, 2007 WL 155451, at *7 (Ohio Ct. App. Jan. 23, 2007)). But under Ohio Rev. Code § 1345.09(C)(1), "[if the] action [is] for rescission, revocation of the consumer transaction must occur within a reasonable time after the consumer discovers or should have discovered the ground for it and before any substantial change in condition of the subject of the consumer transaction." Ohio Rev. Code § 1345.09(C)(1).

Both plaintiffs and BMW move for summary judgment on plaintiffs' CSPA claim. BMW argues that it is entitled to summary judgment because plaintiffs' CSPA claims are based upon BMW's alleged misrepresentations, omissions, and failure to disclose concerning the N63 engine in their vehicles at the "time of purchase" or "time of sale" and, therefore, the two-year statute of limitations accrued when plaintiffs purchased their vehicles, rendering this action time barred. (Doc. No. 70-1 at 21; *see* Doc. No. 13 at ¶¶ 78, 100, 119, 129, 171, 175.)

---

[25] "(C) An action under sections 1345.01 to 1345.13 of the Revised Code may not be brought more than two years after the occurrence of the violation that is the subject of suit, or more than one year after the termination of proceedings by the attorney general with respect to the violation, whichever is later. However, an action under sections 1345.01 to 1345.13 of the Revised Code arising out of the same consumer transaction can be used as a counterclaim whenever a supplier sues a consumer on an obligation arising from the consumer transaction."

In opposition to BMW's motion for summary judgment and in support of their own motion for summary judgment on their fourth claim for relief, plaintiffs argue that the two-year statute of limitations does not run from the purchase date, as BMW contends, because: (1) where the CSPA claim arises from a breach of warranty the two year statutory period begins to run when the warranty period expires; and (2) plaintiffs seek rescission or revocation of acceptance of their vehicles and they brought their claims within a "reasonable time" after discovering the grounds for revocation and they did not discover the N63 engine's defective valve stem seals "until well into the lives of the vehicles" between 2017 and 2019. (*See* Doc. No. 80 at 14–15; Doc. No. 77-1 at 31–32.)

### Recission and revocation

Plaintiffs' amended complaint specifically seeks money damages in their fourth claim for relief. (*See* Doc. No. 13 ¶ 186.) The two-year statute of limitations for plaintiffs' CSPA claim for money damages begins to accrue at the time they purchased their vehicles. *See Temple*, 133 F. App'x at 267; *Quetot v. M & M Homes, Inc.*, No. 12 CO 1, 2013 WL 793219, at *3 (Ohio Ct. App. Feb. 25, 2013) (The discovery rule does not apply to claims for monetary damages under the CSPA. "[W]hen there is a claim for money damages under the CSPA, the statute of limitations begins to run when the violation occurs, not when the consumer discovers the violation.") (citing Ohio Rev. Code §§ 1345.09(C)(1) and 1345.10(C) and collecting cases).

Plaintiffs' argument that the two-year statute of limitations should not apply because they seek rescission and revocation is unavailing. In their prayer for relief, plaintiffs generically seek an "order approving revocation of acceptance of the subject vehicles[,]" however, this relief is not

specifically sought with respect to their CSPA claim (or any specific claim).[26] Moreover, plaintiffs do not allege any facts in the complaint which plead that plaintiffs have sought to revoke the purchase of their vehicles "within a reasonable time after [they discovered] or should have discovered the ground[s] for it and before any substantial change in condition of the subject of the transaction." *See Allen*, 913 F. Supp. 2d at 507 (quoting Ohio Rev. Code § 1345.09(C)(1)).

In the absence of alleged facts in the amended complaint that would support a claim for recission, and in the absence of a CSPA claim specifically seeking recission as a remedy, the Court concludes that the discovery rule to toll the statute of limitations on the basis of recission is not applicable in this case. *Id.* at 506–07 (finding that plaintiff did not plead facts that would support a claim under the CSPA for recission and open-ended claim for equitable relief is insufficient to support a claim for recission under the CSPA and, therefore, plaintiffs "cannot invoke the discovery rule to toll the CSPA statute of limitations").[27]

Moreover, under the statute, plaintiffs may recover either damages or revocation, but cannot both recover damages and rescind the purchase contracts for their vehicles. *See Hokes v. Ford Motor Co.*, Nos. 22502, 22577, 2005 WL 2995112, at *8 (Ohio Ct. App. Nov. 9, 2005)

---

[26] Fed R. Civ. P. 8(a)(1)–(3) sets forth pleading requirements. Rule 8(a)(1)–(3) requires, respectively, that the pleading contain a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought. Fed R. Civ. P. 10, which governs the form of pleadings, requires that pleadings be set forth in numbered paragraphs. *See e.g., Krikorian v. Bank of Am. NA*, No. 20-cv-2274, 2021 WL 3419038, at *1 (D. Ariz. Aug. 5, 2021) (setting forth the requirement under the Federal Rules of Civil Procedure that the complaint must "contain a short and plain statement of the grounds upon which the Court's jurisdiction depends, a short and plain statement of each specific claim, and a good faith demand for the relief sought. Fed R. Civ. P. 8(a)(1)-(3). These pleading requirements are to be set forth in separate and discrete numbered paragraphs[.]").

[27] Nor does plaintiffs' allegation that BMW concealed the alleged engine defect alter the accrual date or toll the two-year statute of limitations on their CSPA claims because plaintiffs directly link their CSPA claim to the time of the sale of their vehicle. *See Kondash v. Kia Motors Am., Inc.*, No. 1:15-cv-506, 2016 WL 11246421, at *20 (S.D. Ohio June 24, 2016) ("The Court reads that the alleged [CSPA] 'violation' was Defendants' fraudulently concealing the true quality and nature of the sunroof and Kia Optima when Kondash purchased it and failing to disclose the defect at any time thereafter. The harm of the violation, overpayment or purchase of the car, is directly linked to the sale of the car. Thus, the Court agrees with Defendants that Plaintiff's claim accrued at the time of sale … and therefore is time-barred, as suit has been brought more than two years thereafter.").

("Owners could either rescind the contract or recover damages, not both[.]") (citing Ohio Rev. Code § 1345.09(A) ("(A) Where the violation was an act prohibited by section 1345.02, 1345.03, or 1345.031 of the Revised Code, the consumer may, in an individual action, rescind the transaction **or** recover the consumer's actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages.") (emphasis added)).

As previously discussed, the only specific relief sought by plaintiffs that is identified in their CSPA claim is for monetary damages under the statute. (Doc. No. 13 ¶ 186 ("Plaintiffs should be awarded three times the amount of their economic damages because Defendant intentionally concealed and failed to disclose the defective nature of the subject vehicles.").) Plaintiffs' generic prayer for relief for revocation is not tethered to their CSPA claim or to any specific claim.[28] Where plaintiffs seek monetary relief for their OSPCA claims which are tethered to the vehicle purchase date, the two-year statute of limitations accrued on the dates they purchased their vehicles, which are the dates on which they claim that BMW's alleged misrepresentations and omissions occurred.

### Breach of warranty

Citing *Temple*, plaintiffs also argue that the statute of limitations on their CSPA claim did not begin to accrue on the date they purchased their vehicles, but when the warranty expired. (*See* Doc. No. 80 at 14.) Ohio courts have held that a manufacturer's failure to repair a defect covered by a warranty can amount to a violation of the CSPA. *Temple*, 133 F. App'x at 266 (citing *Boyle v. Daimler Chrysler Corp.,* No. 2001–CA–81, 2002 WL 1881157, at *7 (Ohio Ct. App. Aug. 16, 2002) and *Brown v. Lyons,* 332 N.E.2d 380, 385 (Ohio Ct. C. P. 1974) ("Failure by a supplier in connection with a consumer transaction to honor express warranties, constitutes deceptive acts and

---

[28] Moreover, revocation is not a practicable remedy as five of the seven plaintiffs have already sold or otherwise disposed of their vehicles. (*See* Doc. Nos. 70-2, 82 ¶ 33.)

practices in violation of the Ohio Consumer Sales Practices Act.")). While it is true that the CSPA can be violated by failing to honor an express warranty as plaintiffs point out in their motion for summary judgment (Doc. No 77-1 at 41–43), plaintiffs do not allege BMW violated the CSPA by breaching an express warranty; rather, they allege breach of implied warranty. (*See* Doc. No. 13 ¶ 182.)

Breach of an implied warranty can serve as a basis for a CSPA claim. *See Lump v. Best Door & Window, Inc.*, Nos. 8-01-09, 8-01-10, 2002 WL 462863, at *6 (Ohio Ct. App. Mar. 27, 2002) (failure to honor implied warranties of merchantability constitutes a deceptive act and practice in violation of the Ohio Consumer Sales Practices Act) (citations omitted). However, the Court has granted BMW's motion for summary judgment on plaintiffs' second claim—breach of implied warranty. Therefore, that alleged breach is unavailable to support plaintiffs' CSPA claim. *See Nicholson v. Jayco, Inc.*, No. 5:15-cv-2010, 2016 WL 5463215, at *19 (N.D. Ohio Sept. 29, 2016) (because the Court has concluded that defendant is entitled to summary judgment on plaintiffs' claim for breach of warranty, defendant is also entitled to summary judgment on plaintiffs' claim that defendant's violation of warranty is a basis for plaintiffs' claim that defendant violated the CSPA).

Accordingly, the two-year statute of limitations began to run on plaintiffs' CSPA claims when they purchased their respective vehicles. The dates that plaintiffs each purchased their vehicles are undisputed: (1) Grover–7/28/2016 (Doc. Nos. 70-2, 82 ¶ 34); (2) Williams–6/27/2016 (*id.* ¶ 22); (3) Walling–6/9/2015 (*id.* ¶ 1); (4) Cribbs–11/2/2009 (*id.* ¶ 39); (5) Massey–6/4/2015 (*id.* ¶ 44); (6) Webb–11/27/2012 (*id.* ¶ 51); and (7) Jarvis–12/24/2014 (*id.* ¶ 20). The instant action was filed January 2, 2019—more than two years after each plaintiff purchased their vehicle.

Accordingly, plaintiffs' CSPA claims are barred by Ohio's two-year statute of limitations, and BMW's motion for summary judgment as to plaintiffs' CSPA claims is granted.

### E.  Tolling

Plaintiffs allege that their claims in the amended complaint are timely filed because the applicable statutes of limitations are tolled based upon: (1) fraudulent concealment (Doc. No. 13 ¶¶ 126–134); (2) the discovery rule[29] (*id.* ¶¶ 135–137); (3) class action tolling (*id.* ¶¶ 141), and (4) that BMW is estopped from relying upon the statute of limitations defense in this action[30] (*id.* ¶¶ 138–140). Because Ohio law governs the statute of limitations for plaintiffs' MMWA claims, Ohio law also governs issues of tolling. *Bishop v. Children's Ctr. for Dev. Enrichment,* 618 F.3d 533, 537 (6th Cir. 2010) ("When the statute of limitations is borrowed from state law, so too are the state's tolling provisions, except when they are 'inconsistent with the federal policy underlying the cause of action under consideration.'") (quoting *Bd. of Regents v. Tomanio,* 446 U.S. 478, 485, 100 S. Ct. 1790, 64 L. Ed. 2d 440 (1980)).

---

[29] Plaintiffs contend they are entitled to tolling of the statute of limitations based upon the discovery rule with respect to their CSPA claims and express warranty claims. *See* Doc. No 89 at 28–30. The Court addressed plaintiffs' discovery rule argument in the context of its analysis of those claims and determined that the discovery rule does not apply to toll plaintiffs' first, third, and fourth causes of action.

[30] In their motions for summary judgment, the parties conflate the distinct concepts of equitable estoppel and equitable tolling. *See* Doc. No. 89 at 25; Doc. No. 85 at 27–28; Doc. No. 70-1 at 22–23. Under the doctrine of equitable estoppel, a defendant is precluded from using the statute of limitations as a defense "when the defendant's conduct induced the delay in filing the action." *Allen*, 913 F. Supp. 2d at 510 (citation omitted). When the doctrine of equitable estoppel is applied to a limitations defense, "a plaintiff must show that the defendant misrepresented the length of the limitations period, promised a better settlement if the plaintiff did not bring suit, or made a similar representation to induce a delay in bringing the suit." *Id.* While plaintiffs claim that BMW was aware of defects in the N63 engine and misrepresented and concealed the defect, plaintiffs do not allege that the concealment and misrepresentation "was calculated to induce plaintiff to forgo the right to sue." *Id.* at 511 (internal quotation marks and citations omitted). Like the plaintiff in *Allen*, plaintiffs allege that the defendant concealed the defects to prevent plaintiffs from discovering the defects, but the amended complaint is devoid of allegations that BMW "made a misrepresentation that induced [plaintiffs] to *forgo filing suit*, which is the sine qua non of equitable estoppel as it relates to estoppel to rely on the statute of limitations as a defense." *Id.* (emphasis in original) (citing among authority *Doe v. Archdiocese of Cincinnati*, 880 N.E.2d 892, 895 (Ohio 2008)); *see* Doc. No. 13 ¶¶ 138–40. Plaintiffs have alleged facts that may support various claims and tolling of the applicable statute of limitations, but do not support precluding BMW from raising the statute as a defense.

BMW concedes that, except for Cribbs and Webb, the statute of limitations on the repair and replace express warranty claims for the remaining five plaintiffs could extend into 2020 and, therefore, this action filed on January 2, 2019 was timely filed within the four-year statute of limitations. (*See* Doc. No. 70-1 at 19–20.) Therefore, the Court's tolling analysis concerns Cribbs and Webb's express warranty claims.

### 1. Equitable tolling and fraudulent concealment

Plaintiffs argue on summary judgment that the statute of limitations on their express warranty claims are equitably tolled and those claims are not barred by the applicable statute of limitations. Fraudulent concealment is a type of equitable tolling. *See Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-cv-18, 2006 WL 3359448, at *6 (N.D. Ohio Nov. 17, 2006) (under Ohio law fraudulent concealment is a type of equitable tolling) (citing *Phelps v. Lengyel,* 237 F. Supp. 2d 829, 836 (N.D. Ohio 2002); *Browning v. Levy,* 283 F.3d 761, 770 (6th Cir. 2002)); *see also Allen*, 913 F. Supp. 2d at 509–10 (citing among authority *Thornton*, 2006 WL 3359448, at *6).

This Court has previously articulated the standard for fraudulent concealment tolling under Ohio law:

> "[U]nder certain circumstances Ohio law recognizes that the concealment of a cause of action can toll that statute of limitations." *Phelps v. Lengyel*, 237 F. Supp. 2d 829, 836 (N.D. Ohio 2002) (citation omitted). Fraudulent concealment is one of those circumstances. *Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-cv-00018, 2006 WL 3359448, at *6 (N.D. Ohio Nov. 17, 2006). To toll the statute of limitations based on fraudulent concealment, "[a] plaintiff must show '(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts.'" *Hamilton Cty. Bd. of Comm'rs v. Nat'l Football League*, 491 F.3d 310, 315 (6th Cir. 2007) (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975)). The question of whether the statute of limitations is tolled due to fraudulent concealment is generally a question of fact not suitable for dismissal at the pleading stage. *See Phelps*, 237 F. Supp. 2d at 836; *see also Hometown Health Plan v. Aultman Health Found.*, No. 2006-cv-06 0350, 2009 WL 1806759, at ¶ 7 (Tuscarawas Ct. Com. Pl. Apr. 15, 2009).

*Grover*, 434 F. Supp. 3d at 632.

Plaintiffs have offered evidence that BMW was aware of oil consumption problems with the N63 engines but concealed/misrepresented those problems through BMW publications to dealers who used these publications to repeatedly assure plaintiffs that their vehicles' oil consumption was "normal," which is the subject of dispute as to the merits of plaintiffs' warranty claims. For example, BMW's SIB 110113, published in May 2013, specifically states that "[t]he additional engine oil consumption of a turbocharged engine, as compared to a normally aspirated engine, is normal and not a defect." (*See* Doc. No. 77-24 at 7.) Service records concerning Webb's complaints of oil consumption reflect that the dealership reviewed SIB 110113 with him. (Doc. No. 77-21 at 7.) While the Court has excluded plaintiffs' expert's testimony and opinion regarding concealment, plaintiffs are free at trial to introduce documents and testimony in support of their fraudulent concealment argument to the factfinder, as well as Manzari's opinion and testimony that the oil consumption experienced by the subject vehicles was not normal. Both Cribbs and Webb testified in deposition that they repeatedly raised the oil consumption issue with the dealership during the warranty period and were repeatedly told by the dealership that the oil consumption they experienced was normal, and not being mechanics, they trusted the dealers' explanation that their cars' oil usage was normal. (*See* Doc. No.77-21 at 12–13, 22; Doc. No. 77-16 at 5, 9, 16.) But when the time came that expensive engine repairs were needed, and the oil consumption increased to a level that could not be considered normal, Cribbs and Webb no longer relied on or trusted their dealerships' statements that the oil consumption of their vehicles was normal. (*See* Doc. No. 77-16 at 10–11; Doc. No. 77-18 at 23 (October 2017); Doc. No. 77-21 at 22–23; 26–30 (spring 2017).)

For its part, BMW's expert opines that BMW "never changed its position regarding engine oil consumption [and] the rate at which it was acceptable for a BMW engine to consume oil" and did not conceal from customers its knowledge that the N63 engine suffered from defective valve stem seals. (*See* Doc. No. 85-5 at 5.) That said, BMW's witness Richard Veren testified that he was not aware of any document in which BMW told consumers that the oil consumption problem in their vehicles could be the result of defective valve stem seals. (*See* Doc. No. 69-4 at 8.)

The evidence advanced by both sides on the issue of concealment is sufficient to raise a genuine issue of material fact as to (1) whether BMW concealed the alleged defect in the N63 engine by repeatedly assuring Cribbs and Webb that engine oil consumption of their respective vehicles was normal, and (2) whether Cribbs and Webb were diligent but failed to discover the alleged defect during the limitations period.[31] *See Harris v. BMW of N. Am., LLC.*, No. 4:19-cv-16, 2020 WL 7074879, at *6–7 (E.D. Tex. Dec. 3, 2020) (given the dealer's explanation that it was "normal" for plaintiffs' cars to burn oil, they had no reason to search the Internet for complaints regarding the N63 engine and did not become aware of such complaints within the limitations period; this is sufficient on summary judgment to support their contention that they exercised reasonable diligence); *cf. Carroll*, 2021 WL 3474032, at *21 (plaintiff did not exercise the due diligence requisite for fraudulent concealment where he did not present the vehicle to a dealership within the warranty period for service or repair related to oil consumption).

### 2.  Class action tolling

Plaintiffs claim that the statutes of limitations on their causes of action are tolled by the class action filed in the United States District Court for the District of New Jersey. (*See* Doc. No.

---

[31] Cribbs purchased the vehicle new and the NVLW on the Cribbs' Vehicle expired due to time on November 2, 2013. Webb purchased his CPO vehicle on November 27, 2012. The NVLW expired due to time on April 20, 2014, and the CPOW expired due to time on April 20, 2016.

13 ¶ 141 (citing *Bang v. BMW of North America, LLC*, Case No. 2:15-cv-6945, 2016 WL 7042071 (D.N.J. 2016)).) They argue that, based upon the *Bang* class action, the statutes of limitations applicable to the instant action are tolled for the period between the initial filing of the class action complaint on September 18, 2015 and the date all of the plaintiffs opted out of *Bang* class action on August 30, 2018, for a tolling period of 2 years, 11 months, and 12 days. (*See* Doc. No. 80 at 15; Doc. No. 77-1 at 30.)

Citing *American Pipe and Constr. Co. v. Utah*, 414 U.S. 538, 94 S. Ct. 38 L. Ed. 2d 713 (1974),[32] BMW contends that plaintiffs' reliance on class action tolling is misplaced because that doctrine only applies to actions where class status was denied, not where, as here, the class action at issue reached a settlement and plaintiffs, as putative class members, opted out of the settlement. (Doc. No. 70-1 at 30–31; Doc. No. 85 at 34–35.) In response, plaintiffs cite no legal authority contrary to BMW's argument, but merely point to the Court's footnote in ruling on BMW's motion to dismiss that plaintiffs plausibly alleged the statute of limitations was tolled by the *Bang* class action and simply assert that "the statute of limitations *should be* tolled for the period of time between the date the *Bang* class action was filed and the date plaintiffs opted out of the class settlement." (*See* Doc. No 80 at 15 (emphasis added); Doc. No. 77-1 at 29.)

The parties' briefing on this issue is cursory and meager. Plaintiffs have provided no legal authority or analysis to counter BMW's argument that plaintiffs are not entitled to class action tolling under *American Pipe*, that the *Bang* class action brought in New Jersey tolls Ohio's statute of limitations as a matter of either state or federal law, or any evidence that would suggest that there is a material fact in dispute regarding the application of *American Pipe* to toll the instant

---

[32] In *American Pipe*, 414 U.S. at 554, the United States Supreme Court held that the filing of a class action tolls the statute of limitations "as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."

action. *See Faessler v. U.S. Playing Card Co.*, No. 1:05-cv-581, 2007 WL 490171, at *4 (S.D. Ohio Feb. 9, 2007) (plaintiff's "bare assertion" that he was delayed in bringing his lawsuit was caused in part by overseas military service and severe business difficulties is insufficient to satisfy plaintiff's burden that he is entitled to equitable tolling of the statute of limitations).

In ruling on the parties' motions for summary judgment, the Court "is in the business of resolving the legal arguments presented to it, not in creating a party's inferred argument for him and then passing judgment on it." *Lyon v. Yellow Transp., Inc.*, No. 2:08-cv-464, 2009 WL 1604807, at *15 (S.D. Ohio June 8, 2009), *aff'd,* 379 F. App'x 452 (6th Cir. 2010)). It is not the Court's role to research or construct legal or factual arguments on behalf of either party, nor is it appropriate to do so. *See Lucas, v. Telemarketer calling from (407) 476-5680 and other telephone numbers,* No. 1:12-cv-630, 2020 WL 9160868, at *4 (S.D. Ohio Sept. 8, 2020)(("It is not the role of this Court to act as an advocate and to defend against Plaintiff's claims on Defendant's behalf."); *see also Nicholson*, 2016 WL 5463215, at *21 (it is not the Court's obligation to conduct the required research, construct arguments, and frame a legal analysis on any party's behalf).

Plaintiffs have failed to rebut BMW's argument on summary judgment that class action tolling is not properly applied in this action and, therefore, the Court rejects plaintiffs' assertion that they are entitled to class action tolling in this action.

**Conclusion**

For all the foregoing reasons, plaintiffs' motion for summary judgment is denied. (Doc. Nos. 64, 76, 77.) BMW's motion for summary judgment is denied as to claims one and three of plaintiffs' amended complaint and granted as to claims two and four of plaintiffs' amended complaint. (Doc. Nos. 65, 70.) BMW's motion to seal is granted. (Doc. No. 92.) The parties' joint motion to exceed page limits is moot, and the Clerk is directed to terminate the motion. (Doc. No. 87.)

**IT IS SO ORDERED**.

Dated: January 24, 2022

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**